**HANDY PANTRY FOOD STORES, INC., Plaintiff-Respondent,**

v.

**KWIK TRIP MARKETS, INC., Defendant-Appellant.**

**No. 48703.**

Missouri Court of Appeals, Eastern District, Division One.

June 4, 1985.

Michael A. Vitale, Lewis & Rice, St. Louis, for defendant-appellant.

Michael J. Doster, Hughes & Doster, P.C., Chesterfield, for plaintiff-respondent.

CARL R. GAERTNER, Judge.

Defendant, Kwik Trip Markets, Inc. appeals from a judgment in the sum of $20,000.00 in favor of plaintiff, Handy Pantry Food Stores, Inc. We reverse.

■ In its petition, plaintiff alleged that the defendant corporation assumed and agreed to pay the balance due upon a debt owed to plaintiff by William Yinger. Defendant denied this averment and asserted the statute of frauds, § 432.010, RSMo. 1978, as an affirmative defense.

The origin of the debt was a contract dated May 6, 1980, whereby William Yinger agreed to purchase from plaintiff a retail food store in St. Charles, Missouri. The purchase price for equipment and inventory totalled $29,667. Yinger made a down payment of $7,000 and was to pay the balance in monthly installments of $500. In August, 1980, Yinger and one Bert Schonlau, formed the defendant corporation. Yinger contributed the St. Charles store in return for 50% of the corporate stock and Schonlau's contribution for the other 50% included a food store in St. Louis County. Yinger, in addition to his share of one-half of the profits, was to be paid an annual salary of $25,000 as the manager of both stores, while Schonlau's involvement was merely that of an investor. After approximately 6 months of operation, Yinger abandoned the venture. His interest in the defendant corporation was conveyed to Schonlau in consideration, at least in part, of forgiveness of Yinger's appropriation of corporate funds.

Ten monthly payments of $500 were made by Yinger to plaintiff on the balance of the May 6, 1980 debt. The last of the 10 payments was by a check signed by Yinger drawn against the account of defendant corporation.

There is considerable dispute concerning who said what to whom and when, about the assumption of Yinger's debt by the defendant corporation. Recitation of the differing versions is unnecessary, however, because there is no dispute concerning the crucial fact—the complete absence of probative evidence that any agreement by defendant corporation to pay the debt of Yinger was ever reduced to writing.

The president of the plaintiff corporation testified that she had never seen any such document but had been told one existed. Yinger testified that he had never seen a document or corporate resolution whereby the defendant corporation assumed his debt to plaintiff but he thought one had been drawn up. Schonlau denied any knowledge of the debt until after Yinger had sold out his interest and left town. No writing evidencing the assumption of the debt was produced at trial, although other corporate resolutions, including a resolution signed by Yinger whereby defendant corporation assumed Schonlau's indebtedness secured by equipment in the St. Louis County store, were introduced.

Section 432.010, RSMo.1978, provides, in pertinent part:

> No action shall be brought ... to charge any person upon any special promise to answer for the debt, default or miscarriage of another person ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized....

*Kliethermes Motor Company v. Cole Motor Service*, 119 S.W.2d 84 (Mo.App. 1938) involved strikingly similar facts. Cole Motor Service, a partnership, was indebted to plaintiff on an open account and on a note. The partnership incorporated under the same name and the partners became the officers and stockholders of the corporation. The court held the absence of

proof of a written assumption of the partnership debt by the corporation was fatal to the plaintiff's case. "It is not enough to say that because the original incorporators were the members of the former partnership, that the corporation would be liable.... Since the corporation was a different entity to that of the maker of the original debt, there must be proof in writing that the corporation had assumed the obligation before it can be held liable." *Id.* at 87.

Here plaintiff's case was submitted to the jury under a not-in-MAI instruction, which required a finding that "defendant promised to perform William R. Yinger's agreement to pay" plaintiff the specified purchase price for the assets of the St. Charles store. The absence of proof that any such promise was in writing is fatal to plaintiff's cause of action against the corporate defendant. The mere fact that Yinger was a corporate officer and shareholder is insufficient to overcome the requirements of the statute of frauds.

Plaintiff's argument that this case falls within an exception to the statute of frauds enunciated in *Ryan Equipment Company v. Ficken*, 423 S.W.2d 63 (Mo. App.1967) and *Carvitto v. Ryle*, 495 S.W.2d 109 (Mo.App.1973) misses the mark. In both of these cases one who orally promised to pay the debt of another was found to have made such a promise in order to obtain some advantage for himself, rather than merely to guarantee the debt of another. Such promises were found to be original rather than collateral and thus beyond the scope of the statute of frauds. However, in both cases, there was new consideration for the promise flowing from the creditor to the promisor. This new and independent consideration, serving as the motive for the promise to pay another's debt, causes the promise to be an original undertaking and therefore not rendered unenforceable by the statute. *Ryan Equipment*, 423 S.W.2d at 73; *Carvitto*, 495 S.W.2d at 114. No new and independent consideration exists in this case. In each of the cited cases, the creditor was induced to forego available action against its original debtor by reason of the promise of another to pay the debt. This forebearance, which was of direct benefit to the promisors, formed the consideration for the promises and the conclusion that it was an original agreement rather than an agreement collateral to the underlying debt. Here, assuming arguendo, the evidence supported a finding that Yinger promised to plaintiff that the corporate defendant would pay his debt, that he had the apparent authority to make such a promise and that the defendant corporation benefited therefrom, plaintiff gave no consideration of any kind for such promise. Plaintiff merely continued to accept installment payments from Yinger drawn, at first, on his individual account and finally, one check drawn by him on the corporate bank account. No new or independent undertaking is established by such conduct.

It follows that the trial court erred in overruling defendant's motion for directed verdict. The judgment of the trial court in favor of plaintiff is reversed.

PUDLOWSKI, P.J., and KAROHL, J., concur.