AUTOQUIP CORPORATION,
Plaintiff-Respondent,

v.

NICHOLSON & ASSOCIATES,
INC., Defendant,

and

Rite-Hite Corporation,
Defendant-Appellant.

No. 51584.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 20, 1987.

Motion for Rehearing and/or
Transfer Denied Dec. 2, 1987.

David S. Slavkin, St. Louis, for defendant-appellant.

David M. Duree, St. Louis, for plaintiff-respondent.

DOWD, Judge.

Defendant Rite-Hite Corporation appeals from the judgment of the trial court, entered in accordance with a jury verdict, finding that Rite-Hite Corporation agreed to pay the debts owed to Autoquip Corporation by Nicholson & Associates, Inc. We affirm.

Plaintiff Autoquip Corporation (hereinafter Autoquip) is a manufacturer of hydraulic lifting equipment used on loading docks and industrial plants. Defendant Rite-Hite Corporation (hereinafter Rite-Hite) is a manufacturer of dock levelers and dock locks. Nicholson & Associates, Inc., (hereinafter N & A), a corporation owned by William Nicholson, was the St. Louis distributor of both Autoquip and Rite-Hite products.

N & A, the distributor, began experiencing financial difficulties and in July 1981 fell in arrears to Autoquip. On July 23, 1981, William Nicholson executed a promissory note to Autoquip on behalf of himself and N & A. The promissory note was in the amount of $83,481.82 and provided that the sum be paid in six installments with the sixth and final installment, a balloon payment of $65,074.05, being due on January 10, 1982. The note further provided that interest after maturity of the note be calculated at a rate of eighteen percent per annum and that reasonable attorneys' fees necessary for collection be borne by the promisor.

In January 1982, the promissory note remained unpaid. In the Spring of 1982, N & A became insolvent.

The President of Rite-Hite, Michael White, on May 26, 1982, telephoned James Galante, Vice-President of Marketing for Autoquip. Rite-Hite is owned by Michael White's family. Mr. White discussed with Mr. Galante Rite-Hite's interest in preserving consistency with its distributors and thus in maintaining N & A as its known distributor in the St. Louis area. William Nicholson, owner of N & A, was present in Mr. White's office during the telephone conversation.

Mr. White offered to purchase N & A and take care of the debt owed to Autoquip if Autoquip would agree to certain conditions. First, Autoquip would have to agree to allow the indebtedness, which was already four months overdue, to be paid over a six month period. Secondly, Autoquip would have to agree to use N & A as distributor of Autoquip products for a two year period. Finally, Autoquip would have to agree to do business with N & A on a thirty day credit basis, as opposed to the existing method of requiring N & A to pay cash before the goods were shipped. Under the thirty day terms, N & A would not be responsible for the cost of equipment sold until thirty days after receipt of Autoquip's invoice.

Mr. Galante of Autoquip testified that during this telephone conversation, Mr. White of Rite-Hite stated that he would guarantee the loan, finance it and pay off the debts. According to Mr. Galante this was an agreement between Autoquip and

**666**

Rite-Hite. Mr. White, on the other hand, testified that he made no guarantee of the debt by Rite-Hite but rather agreed that the debt would be repaid by N & A once Rite-Hite purchased N & A. Mr. Nicholson, who was present with Mr. White during the conversation, testified Mr. White stated that Rite-Hite would make the loan payments to Autoquip.

Mr. White asked for confirmation in writing from Autoquip of the terms agreed to in the telephone conversation. Autoquip introduced into evidence a letter from Mr. Galante to Mr. White and Rite-Hite. Mr. White testified this letter was a confirmation of the terms discussed.

The letter, dated March 26, 1982, set out the amount of the debt outstanding, the interest due, and the amount owing for accounts receivables. The letter included the agreement that Autoquip would continue to use N & A as its distributor for a two year period and that sales of Autoquip products would be billed on a thirty day open account basis.

On June 3, 1982, Rite-Hite purchased all of the N & A stock from William Nicholson. The stock purchase agreement was silent on whether Rite-Hite assumed the debts of N & A. William Nicholson became N & A's main salesperson. One installment under the note was paid to Autoquip by N & A through loans made by Rite-Hite to N & A. Thereafter, William Nicholson left N & A to form his own distribution company. He later filed bankruptcy and was released from any personal liability for the debt. At the end of 1982, Rite-Hite closed N & A. The debt owing to Autoquip was left unsatisfied.

In December 1982, Autoquip brought this action against N & A and Rite-Hite. As to Rite-Hite, Autoquip contended that Mr. White, on behalf of Rite-Hite, promised to pay the debts of N & A owing to Autoquip and that Autoquip extended Rite-Hite valuable consideration in exchange for its promise. Autoquip submitted its case to the jury solely against Rite-Hite. The jury found for Autoquip and awarded Autoquip $43,858.30 under the loan including interest, $10,419.20 on the receivables account

including interest, and $10,964.58 in attorneys' fees.

For purposes of clarity, defendant Rite-Hite's second and third points on appeal will be addressed first. Rite-Hite raises the statute of frauds in both of these points, contending Autoquip is attempting to enforce an oral promise to pay the debts of another.

In its second point Rite-Hite contends the trial court erred in failing to direct a verdict in its favor because Autoquip's claim is barred by the Statute of Frauds, § 432.010, RSMo 1986. In point three, Rite-Hite contends the trial court erred in refusing to give Rite-Hite's requested instruction that required the jury to find for Rite-Hite unless the alleged promise was in writing and signed on behalf of Rite-Hite.

█ The original/collateral promise distinction is the standard used in determining whether an oral promise is outside the statute of frauds. An oral promise to pay the debts of another is not enforceable as barred by the statute of frauds. *Wahl v. Cunningham*, 320 Mo. 57, 70–71, 6 S.W.2d 576, 581 (Mo. banc 1928); *Meinhold v. Huang,* 687 S.W.2d 596, 598 (Mo.App.1985). It is well established, however, that a promise which is an original undertaking between the promisor and promisee, as opposed to a promise which is collateral to the primary obligation of a third party, is not within the purview of the statute of frauds and need not be in writing. *Id.* Thus, a promise by which the promisor makes or creates a primary and direct debt or obligation of his own is enforceable. *Id.*

█ The form of the promise is not important: "The fact that such promise may in form be a promise to pay another's debt or that it might be incidentally beneficial to another debtor does not alone bring it within the statute of frauds." *Carvitto v. Ryle*, 495 S.W.2d 109, 114 (Mo.App.1973). If the main objective of the promise is to serve an interest of the promisor or directly benefits the promisor, rather than to answer for the debt of another, then the promise is not within the statute. *Id.*

■ The tests to be applied in determining whether or not a promise is an original undertaking and outside the statute of frauds are: (1) Whether credit has been given by the promisee to the promisor alone, and (2) Whether the leading or main purpose of the promisor in making the promise was to gain an advantage for himself or to promote some interest of his own and the promise was supported by consideration beneficial to the promisor. *Meinhold, supra,* at 598; *Diehr v. Carey,* 238 Mo.App. 889, 897, 191 S.W.2d 296, 300 (Mo. App.1945).

In applying these tests, the court in *Carvitto v. Ryle, supra,* held an oral promise to guarantee payment to a subcontractor was an original undertaking and outside the statute of frauds. In *Carvitto,* subcontractors doing cement work for a homeowner contemplated leaving the job site after learning that the general contractor, by whom they were employed, had issued bad checks. The homeowner orally promised the subcontractors that if they finished the job he would see that they were paid. In finding the promise to be an original undertaking, the court reasoned that the main objective of the homeowner's promise was his own interest in seeing the work on his home completed. *Id.* at 114–15.

Likewise, in *Meinhold v. Huang, supra,* a real estate broker sought a capital contribution from the promisee in order to organize a corporation to buy and sell homes. The broker orally promised the promisee that if the corporation formed did not repay the money he would personally guarantee repayment within a year. This court held the broker's promise to be an original undertaking reasoning that the contribution money was the cornerstone of the broker's real estate venture and that it was obvious the promisee was extending credit to the broker and not to a nonexistent corporation. *Meinhold, supra,* at 599.

Further, in *Baron v. Lerman,* 719 S.W. 2d 72, 79 (Mo.App.1986), this court held that an oral promise by the owner of a business to pay for financial services rendered to his company was not barred by the statute of frauds as the main objective of the promise was to serve the owner's own interests in securing the services for his company.

Rite-Hite relies primarily on *Diehr v. Carey, supra,* in contending enforcement of the promise is barred by the statute of frauds. In that case, the father of an injured child employed a doctor to administer medical treatment to the child. An agent for the father's insurance company orally promised the doctor that he would see that the doctor's bills were taken care of. The court held the oral promise by the agent was not an original undertaking and was unenforceable. At the time the promise was made the doctor was already employed to render services by the father. Thus, unlike the case at bar, the promisee doctor did not give credit solely to the promisor insurance company, nor was there any consideration for the promise beneficial to the insurance company.

■ In the case before us the evidence adduced at trial shows that the promise made by Rite-Hite was an original undertaking and outside the statute of frauds. The main purpose of Rite-Hite, in making the promise to take care of N & A's debt owed to Autoquip, was to promote Rite-Hite's own interest in maintaining its distributor known to Rite-Hite customers. Autoquip agreed to confer favorable terms in future dealings with N & A to make the purchase of N & A stock by Rite-Hite advantageous to Rite-Hite. As consideration for Rite-Hite's promise, Autoquip agreed to use N & A as its distributor for a two year period. Autoquip extended credit to Rite-Hite in allowing Rite-Hite to repay the already overdue note over a six month period and in agreeing to do business with N & A on thirty day credit terms. Autoquip extended these benefits to Rite-Hite, not N & A an insolvent corporation. All of these agreements by Autoquip directly benefited Rite-Hite's interest in purchasing N & A and made that purchase possible.

The trial court did not err in failing to direct a verdict for Rite-Hite or in refusing Rite-Hite's offered instruction. Rite-Hite's second and third points are denied.

■ Rite-Hite's final point on appeal is a challenge to the sufficiency of the evidence. Rite-Hite's allegation of error is limited to the contention that the trial court erred in denying Rite-Hite's motion for a directed verdict in that Autoquip failed to meet its burden of proof, by clear and convincing evidence, that Rite-Hite assumed the debts of N & A.

"We review denial of a motion for directed verdict as a question of law, viewed in the evidentiary light most favorable to the nonmoving party, and determine whether that party has made a submissible case." *Fricke v. Valley Production Credit Assn.,* 721 S.W.2d 747, 752 (Mo.App.1986).

After a review of the record we find Autoquip did make a submissible case. It is true that the evidence must be "clear and convincing" to establish assumption of a debt by parol evidence. *KAM, Inc. v. White,* 675 S.W.2d 459, 462 (Mo.App.1984). The standard of "clear and convincing" evidence, however, does not mean that there may not be contrary evidence. *Grissum v. Reesman,* 505 S.W.2d 81, 86 (Mo.1974).

In *KAM, Inc., supra,* the court found the "clear and convincing" standard to be met in an action to enforce a promise to pay the debt of another as an original undertaking and outside the statute of frauds. At issue was a promise by the assignee of a buyer's interest in a business to assume the debt owed by the buyer to the seller. This agreement was memorialized in a writing between the buyer and seller but was not signed by the assignee. The court concluded that the issue of whether there was an agreement to assume the debt was properly submitted to the jury.

The plaintiff in *KAM, Inc.,* adduced sufficient evidence to prove an agreement of assumption in that portions of the assignee's deposition were introduced into evidence wherein the assignee admitted purchasing the business site and equipment, receiving a bill of sale, and agreed that the writing between the buyer and seller relating that the assignee would assume the promissory note was accurate. The court found plaintiff introduced sufficient evidence to make a submissible case even though the assignee at trial denied that the statements she made in her deposition were true and denied she assumed the note.

From our review of the record we find Autoquip adduced "clear and convincing" evidence that Rite-Hite agreed to assume the debts of N & A. Mr. Galante of Autoquip testified that Mr. White of Rite-Hite stated he would guarantee the loan. Mr. White is the President of Rite-Hite and Rite-Hite is a corporation owned by Mr. White's family. The logical interpretation of such a statement is that Rite-Hite, not N & A, was guaranteeing repayment of the loan. Likewise, William Nicholson, owner of N & A, who was present with the President of Rite-Hite during the telephone conversation with Mr. Galante, testified that the President of Rite-Hite stated Rite-Hite Corporation would make the installment payments on the note.

Further, Autoquip introduced a letter memorializing the agreement between Autoquip and Rite-Hite. This letter was authored by Mr. Galante of Autoquip and was addressed to the President of Rite-Hite. The letter set out the terms of the agreement made and the amount of the debt outstanding. In his deposition, read into evidence, the President of Rite-Hite admitted that this letter was a confirmation of the agreement made with Autoquip and of the handling of the indebtedness. Although there was contrary evidence, Autoquip introduced sufficient evidence to meet its standard of proof and to make the issue a jury question.

Rite-Hite further contends the trial court never made a determination that Autoquip met its standard of proof before submitting the case to the jury. The trial court made such a determination in denying Rite-Hite's motion for a directed verdict.

Viewing the evidence in a light most favorable to Autoquip we find Autoquip made a submissible case that Rite-Hite assumed the debts owed by N & A to Autoquip. The trial court did not err in failing to direct a verdict for Rite-Hite. Point denied.

The judgment of the trial court is affirmed.

STEPHAN, P.J., and PUDLOWSKI, J., concur.