**TIP–TOP PLUMBING CO., INC., Respondent,**

v.

**George ORDEMANN, Appellant.**

**No. WD 52932.**

Missouri Court of Appeals, Western District.

June 10, 1997.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Frederick G. Thompson, IV, Kansas City, for Respondent.

Jon A. Blongewicz, Overland Park, KS, for Appellant.

Before ULRICH, C.J., P.J., and LOWENSTEIN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

George Ordemann appeals a judgment after a bench-trial in favor of Tip–Top Plumbing Co., Inc., respondent, holding him personally liable for $14,691.77 in plumbing work done by respondent for Goode–Ordemann and G.W. Construction, Inc. Before its dissolution in November 1990, Goode–Ordemann was a partnership consisting of two corporations, including G.W. Construction.

Appellant raises three points on appeal. In Point I, appellant claims the trial court erred in holding him personally liable for the plumbing work done by respondent because appellant's oral promise that he would personally "take care of" the contracts with respondent violated the Statute of Frauds. In Point II, appellant claims that even if the oral promise did not violate the Statute of Frauds, the trial court erred in awarding attorney fees to respondent because he never agreed to be personally responsible for attor-

ney fees in the event of nonpayment on the contracts. Finally, in his third point, appellant claims that the trial court erred in entering judgment in favor of respondent because he was only personally liable for monies owed respondent under one written contract between respondent and G.W. Construction, Exhibit 3, and that sufficient payments had been made to pay for this work.

We affirm.

## Facts

Tip-Top Plumbing Co., Inc., respondent, contracted to do plumbing work for the partnership of Goode–Ordemann, which was in the residential construction business. Goode–Ordemann was comprised of two corporations, G.W. Construction, Inc., of which George Ordemann, appellant, was president, and Goode Construction, Inc. Goode–Ordemann was dissolved in November 1990 because of financial difficulties, but G.W. Construction remained in business. At the time of dissolution, the partnership was involved in various construction projects on which respondent was working. G.W. Construction undertook to complete several of these projects and contacted respondent about continuing to do the plumbing work on them, as well as contracting to do plumbing work on new projects.

Respondent's president and owner, Glenn Ladd, met with appellant in early 1991 about working on the old and new construction projects. At this meeting, Ladd told appellant that he needed a personal guarantee from him in order for respondent to continue working on the old projects and to start the new projects. In response, appellant told Ladd that he would "take care of" that. One of the written contracts the parties entered into thereafter, Exhibit 3, contained language stating that appellant personally guaranteed performance and payment of the contract obligations, which included payment of attorney fees in the event of nonpayment. After Goode–Ordemann dissolved, payments were made to respondent, but not enough to cover all the work it had performed on the various old and new projects.

Respondent sued appellant personally for breach of contract, seeking payment for all the work it had done for Goode–Ordemann and G.W. Construction, plus attorney fees. The trial court granted judgment in favor of respondent for $14,691.77, plus attorney fees in the amount of $700. This appeal followed.

## Standard of Review

■ In a court-tried case, the judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law or it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Fulton v. Adams,* 924 S.W.2d 548, 551 (Mo.App.1996). We view the evidence in the light most favorable to respondent, deferring to the trial court on credibility issues. *Hutson v. Blazin' Saddle Entertainment, Inc.,* 930 S.W.2d 70, 71 (Mo.App.1996).

## I.

Appellant first claims that the trial court erred in holding him personally liable for any amounts due respondent under its contracts with Goode–Ordemann and G.W. Construction based on appellant's oral promise to "take care of" these contractual debts because this violated the Statute of Frauds in that a promise to answer for the debt of another must be in writing. Respondent argues that the Statute of Frauds does not apply here because (1) appellant's oral promise was original, not collateral; (2) appellant failed to plead the Statute of Frauds as an affirmative defense; and (3) under the doctrine of complete performance, it had fully executed its side of the oral agreement. Because we agree with respondent that the Statute of Frauds does not apply here because appellant's promise was original, not collateral, we affirm.

Respondent's Exhibit 2, a part of respondent's accounts ledger, reflects what was owed respondent for the plumbing work performed by it on the various old and new projects for Goode–Ordemann and G.W. Construction, and also reflects the payments made. In this respect, appellant does not dispute the fact that he was personally liable under Exhibit 3, a written contract between

respondent and him, which included a specific provision as to appellant's personal guarantee. What he disputes is owing any money on the old contracts of Goode–Ordemann and the new contracts of G.W. Construction, except Exhibit 3, in that his guarantee was oral only, which violates the Statute of Frauds. Thus, the issue is whether appellant could be held personally liable for monies owed respondent under its contracts with Goode–Ordemann and G.W. Construction, which he did not guarantee in writing.

■ Appellant is correct that "[n]o action shall be brought to ... charge any person upon any special promise to answer for the debt, default or miscarriage of another person ... unless the agreement upon which the action shall be brought ... shall be in writing and signed by the party to be charged therewith...." § 432.010; *See also, Handy Pantry Food Stores, Inc. v. Kwik Trip Markets, Inc.,* 692 S.W.2d 388, 389 (Mo.App.1985); *Waggoner v. Davidson,* 189 Mo.App. 345, 175 S.W. 232, 233 (1915). However, there is an exception to this rule. In *Carvitto v. Ryle,* 495 S.W.2d 109 (Mo.App. 1973), this court held that if the oral agreement to answer for the debt of another is an original promise, as opposed to a collateral promise, it is enforceable. *See also, Mertens v. McMahon,* 334 Mo. 175, 66 S.W.2d 127 (1933). The question then for us to decide is whether the oral promise by appellant here to "take care of" the unpaid debts of Goode–Ordemann and G.W. Construction pursuant to its contracts with respondent was original or collateral.

In *Carvitto,* a cement finishing subcontractor was hired by a residential home contractor. Soon after starting work, the subcontractor learned that the contractor had written bad checks to subcontractors in the past. The subcontractor informed the property owner of its concern, but went back to work after the property owner assured the subcontractor that he would "see that you get your money." This court held that:

> [t]he basic rule as to whether a promise falls within this section of the Statute of Frauds [covering promises to answer for the debt of another] and is therefore void and unenforceable, lies in the determina-

tion of whether the promise is original or collateral. If it is original, it is enforceable. If it is merely collateral, it is not enforceable.

*Carvitto,* 495 S.W.2d at 114.

> [T]he tests to be applied to determine whether an agreement is an original undertaking, and not within the statute of frauds, are laid down as follows: (1) Credit must be given by the promisee to the promisor alone; and (2) the leading or main purpose of the promisor in making the promise must be to gain some advantage for himself, rather than to become the mere guarantor or surety of another's debt, and the promise must be supported by a consideration beneficial to the promisor.

*Id.,* quoting *Diehr v. Carey,* 238 Mo.App. 889, 191 S.W.2d 296, 300 (1945).

> The fact that such promise may in form be a promise to pay another's debt or that it might be incidentally beneficial to another debtor does not alone bring it within the statute of frauds. If the "leading" or "main" object of the promise is not to answer for the debt or obligation but rather to serve an interest of the promisor or if it directly benefits him, the promise is not within the statute.

*Carvitto,* 495 S.W.2d at 114. In *Carvitto,* we found that the property owner's promise was made in his own interest in that the main purpose of it was to ensure that the work was completed and thus, the oral promise was original, not collateral, and was enforceable.

Here, the evidence was that there were several bank loans that appellant had personally guaranteed covering projects of Goode–Ordemann, on which respondent was working at the time of its dissolution. If the projects were not completed, appellant would be personally liable on these loans. Further, G.W. Construction, had contracts for new construction projects on which respondent agreed to continue acting as the plumbing contractor. The evidence was that appellant was a paid officer of G.W. Construction, and as such, had a personal interest in the new projects being completed. Respondent's evi-

dence was that it only agreed to complete the old projects and undertake the new projects because of appellant's personal guarantee to be responsible for the old contracts of Goode–Ordemann and new contracts of G.W. Construction. As such, we find that appellant's oral promise was original, not collateral, because there was sufficient evidence from which the trial court could infer that the main purpose of appellant's oral promise was to gain a benefit for himself and that there was consideration for the same. Thus, the trial court's reliance on appellant's oral promise to hold him personally liable for the plumbing work done by respondent for Goode–Ordemann and G.W. Construction was not prohibited by the Statute of Frauds.

Point denied.

## II.

In Point II, appellant claims that the trial court erred in awarding respondent $700 in attorney fees. Appellant does not challenge the amount as being unreasonable, but contends that there was no basis for the award in that appellant never personally agreed to be liable for attorney fees. We disagree.

> Missouri Courts have historically adhered to the "American rule" that, with certain exceptions, litigants bear the expense of their own attorney fees. Ordinarily, any exceptions fit into one of four categories: recovery of fees pursuant to contract, recovery provided by statute, recovery as an item of damage to a wronged party involved in collateral litigation, and, occasionally, reimbursement when ordered by a court of equity to balance benefits.

*Harris v. Desisto,* 932 S.W.2d 435, 448 (Mo. App.1996), citing *Nix v. Nix,* 862 S.W.2d 948, 952 (Mo.App.1993). Here, the only possible basis for an award of attorney fees against appellant was the contract exception.

■ The only written contract that was admitted into evidence was Exhibit 3, a contract between G.W. Construction and respondent executed after the dissolution of Goode–Ordemann, which included the following language concerning the payment of attorney fees and appellant's personal guarantee:

> In the event that payment is not made when due or in the event that this matter is referred to an attorney for collection, then in such event owner agrees to pay attorney a reasonable fee together with other costs which may be incurred. Undersigned personally guarantees performance and payment of this contract.
>
> Accepted /s/ George Ordemann

Giving these terms their ordinary meaning, we find appellant agreed to be personally liable for any breach of the "performance and payment" of the contract, which would include the payment of attorney fees in the event of nonpayment under the contract. Thus, the question for us to answer is whether appellant breached this contract for nonpayment, and thus, was liable, *inter alia,* for an award of attorney fees.

■ The trial court's judgment did not specify which contracts were breached. It simply awarded a lump sum for plumbing work performed by respondent, which was the sum shown on respondent's Exhibit 2 as the total amount due respondent for the plumbing work done on the old and new contracts with Goode–Ordemann and G.W. Construction. This amount included work performed pursuant to Exhibit 3.[1] From this, it is reasonable to conclude that the trial court did not attempt to allocate payments to any particular contract, but found that none of the contracts had been paid in full, including Exhibit 3, and thus, were breached. This interpretation is consistent with respondent's evidence and argument in response to appellant's claim in Point III, *infra,* wherein appellant claims that if the payments made had been applied by respondent to the new contract between respondent and G.W. Construction, Exhibit 3, this contract would not be in breach for nonpayment. We reject this claim of misapplication in Point III. Thus, because we are to affirm the trial court's judgment "if it is deemed correct under any reasonable theory supported by all of the evidence," *Jones v. Jones,* 903 S.W.2d 277, 281 (Mo.App.1995), and because Exhibit 3

---

1. Appellant does not challenge on appeal the failure of the trial court to specify which con-

tracts were breached in its lump sum damage award.

provided for an award of attorney fees in the event of nonpayment, the payment of which appellant personally guaranteed, we find the trial court did not err in awarding attorney fees against appellant as provided for in the contract.

Point denied.

### III.

Appellant claims in his third and final point that the trial court erred in entering judgment against him, because sufficient money had been paid to respondent to satisfy any personal liability he had to the respondent under the written contract in evidence, Exhibit 3, which he personally guaranteed. As he did in Point I, in this claim, appellant is contending that he was not personally liable on any Goode–Ordemann or G.W. Construction contracts which did not include a written personal guarantee, but that he was only personally liable for the new contract between G.W. Construction and respondent, Exhibit 3, which he argues was paid. We disagree.

We found in Point I that, pursuant to his oral promise, appellant could be held personally liable for the old contracts of Goode–Ordemann, as well as any new contracts with G.W. Construction entered into after the dissolution of Goode–Ordemann. The upshot of this fact and the fact appellant concedes his personal liability under Exhibit 3, is that it is irrelevant how the monies paid were applied to the various contracts. Regardless of how the payments were applied, the bottom line is that the total amount owed by appellant, as found by the trial court, would be the same.

Even assuming, *arguendo*, that application of payments was a relevant issue, appellant's argument is without merit. "Where payments are made on several debts due to the same person, the debtor making them may specify the debt or account to which the payments will apply. If the debtor fails to do so, however, the creditor may make the application." *Messmer v. Juden*, 812 S.W.2d 269, 270 (Mo.App.1991). Here, the evidence does not indicate who made the payments to

respondent or to Kinney's[2] on respondent's behalf. The evidence only reflects that payments were credited against the accounts on which appellant was ultimately found to be personally liable. The evidence also reflects that it was respondent's bookkeeper's general practice to apply payments to the oldest accounts, but occasionally applied them to smaller accounts so she could close the accounts, for bookkeeping purposes. Further, respondent's evidence was that neither appellant nor anyone on his behalf ever instructed respondent on how payments on the accounts were to be applied. Thus, respondent was authorized to apply the payments to any accounts on which appellant was liable. *Messmer*, 812 S.W.2d at 270.

Point denied.

### Conclusion

The trial court's judgment for respondent in the amount of $14,691.77, plus attorney fees in the amount of $700 is affirmed.

All concur.

---

**2.** Kinney's was another plumbing contractor who took over for respondent on several projects and served as a conduit for payments made to it

which belonged to respondent for work which it had already completed.