**Jeffrey A. COCCO, Respondent,**

v.

**Katherine Frances SCHMITZ, Appellant.**

**No. WD 61010.**

Missouri Court of Appeals, Western District.

April 29, 2003.

Daniel C. Mizell, Lake Ozark, MO, for Appellant.

Marvin W. Opie, Versailles, MO, for Respondent.

Before ULRICH, P.J., LOWENSTEIN and HOLLIGER, JJ.

### Overview

HAROLD L. LOWENSTEIN, Judge.

The plaintiff, Jeffrey Cocco, a member of the military, began a romantic relationship with the defendant, Katherine Schmitz. He either bought or provided his own household items to Schmitz, or paid certain of her bills when he moved in with her for limited amounts of time. He was transferred. She began another relationship.

He filed the following petition:

Count I—Replevin of or damages for personal property (various items ranging from an upright freezer, expensive sound speakers and TV to a fishing pole) with a total value of $4,770.

Count II—Five loans he made to her in 2000–01 ($768, $1,223, $150.50 and $50.00)

Count III—Fingerhut loan of $1,248 plus interest for the purchase of a couch, and a debt of $68 to AT&T.

A remarkably brief trial to the court was held. Ms. Schmitz claimed all that had been provided to her were gifts; or in the case of any agreement of hers to assume the debt created for a couch purchased from Fingerhut, the agreement was required to have been in writing under the Statute of Frauds.

The court handed down the following judgment:

Count I—Schmitz to return property or judgment in favor of Cocco of $3,325

Count II—Judgment for Cocco—$1,608

Count III—Judgment for Cocco—$1,316

### Factual and Procedural History

Appellant, Katherine Schmitz, and respondent, Jeffrey Cocco, were involved in a romantic relationship in May of 1998. Although Cocco maintained a permanent residence in Waynesville, Missouri, he stayed with Schmitz on the weekends at her apartment in Versailles, Missouri, and later at her home in Barnett.

During the course of the parties' relationship, Cocco purchased several items of personal property and placed them in Schmitz's home. One of the items purchased by Cocco and placed in Schmitz's home was a couch purchased for approxi-

mately $1,200 from a Fingerhut catalog. Cocco financed the couch through Fingerhut and alleges that Schmitz orally agreed to pay Cocco's debt to Fingerhut with a tax refund; however, it was not paid by Schmitz who retained the property. Cocco has never seen the couch. As set out in Count II, Cocco also paid for some repairs to Schmitz's vehicle, established telephone service at her home with AT&T, and loaned her money. These five loans made in the latter part of 2000 and early 2001, were barely touched upon at trial. The amount of the October loan for car repairs, $768.16, was explained by Cocco, and a receipt for his payment was offered in evidence. At trial he agreed he would bear one-half of that expense. There was no evidence as to the claimed loan of $1,223.94.

Cocco is a staff sergeant in the United States military. During the parties' relationship, he was dispatched to Korea. Cocco left his personal items at Schmitz's home when he departed. While Cocco was in Korea, Schmitz ended the relationship. Cocco maintained that Schmitz agreed to store his personal property for him while he was in Korea.

Schmitz, on the other hand, believed that the property being stored in her home were gifts. She testified that she never agreed to pay Cocco back for any of the purchases, never asked Cocco to repair her vehicle, and never agreed to pay back any alleged loans. There was no written agreement regarding who owned the personal property and there was no written agreement evidencing any debt payable to Cocco.

Cocco's three-count amended petition against Schmitz sought: (1) replevin of the personal property or payment of the value; (2) payment of loans totaling $2,242.10;

and (3) payment of $1,248.79 for the debt to Fingerhut, and $68.09 for the debt to AT&T. After a bench trial, the trial court entered judgment in favor of Cocco. Pursuant to the judgment, under Count I Schmitz was to return the property listed or pay Cocco the sum of $3,325. Schmitz was also ordered to pay Cocco $1,608.02 as to Count II, and $1,316.88, as to Count III. Schmitz appeals. Her first point concerns Count III, the Fingerhut debt, and her only other point addresses the loans under Count II. The judgment on Count I has not been appealed.

## Standard of Review

"In a court-tried case, the judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law or it erroneously applies the law." *Tip-Top Plumbing Co. v. Ordemann,* 946 S.W.2d 786, 788 (Mo.App.1997) (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). When reviewing a court-tried case, this court views all evidence and inferences in the light most favorable to the judgment and disregards all contrary evidence and inferences, deferring to the trial court on issues of credibility. *Strubberg v. Roethemeyer,* 941 S.W.2d 557, 560 (Mo.App.1997).

## I.

Schmitz argues in her first point that the trial court erred in awarding Cocco $1,316.88 [1] under Count III of Cocco's amended petition because the petition alleges a suretyship and for a suretyship to be enforceable it must be in writing.

Cocco incurred a $1,248.79 debt to Fingerhut Credit Advantage for a couch placed

1. Count three of Cocco's petition prayed for $1,248.79 for the couch debt and $68.09 for

the phone bill. Schmitz does not contest the phone bill debt.

and remaining in Schmitz's home. Cocco alleged that Schmitz agreed to make the payments to Fingerhut but failed to do so.

■ The Statute of Frauds requires that any promise to pay the debt of another must be in writing. § 432.010, RSMo 2000.[2] Section 432.010 states, in pertinent part, that "[n]o action shall be brought to ... charge any person upon any special promise to answer for the debt, default or miscarriage of another person ... unless the agreement upon which the action shall be brought ... shall be in writing and signed by the party to be charged therewith...." "An exception to the statute exists if the oral agreement to answer for the debt of another is an original promise, as opposed to a collateral promise." *Owens v. Goldammer,* 77 S.W.3d 76, 80 (Mo. App.2002) (citing *Swarens v. Pfnisel,* 324 Mo. 1245, 26 S.W.2d 951, 953 (1930); *Tip–Top Plumbing,* 946 S.W.2d at 789). An exception to the statute of frauds is rigidly scrutinized and "sparingly invoked." *McKenna v. McKenna,* 607 S.W.2d 464, 468 (Mo.App.1980) (quoting *Steere v. Palmer,* 359 Mo. 664, 223 S.W.2d 391, 392 (1949)).

■ The distinction between an original and collateral promise is the standard used to determine whether an oral guarantee is enforceable. *Owens,* 77 S.W.3d at 79–80. In order for an oral promise to be an original obligation not covered by the statute of frauds (and therefore need not have been in writing to be enforceable), two elements must be met. *Id.* at 80. "First, credit must be given by the promisee to the promisor alone." *Id. See Swarens,* 324 Mo. 1245, 26 S.W.2d 951 (plaintiff doctor rendered medical services to the defendant; defendant's relative told the

plaintiff she would pay for defendant's medical services); *Meinhold v. Huang,* 687 S.W.2d 596 (Mo.App.1985) (defendant solicited $55,000 from plaintiff to build houses; defendant promised he would personally guarantee repayment within one year). Second, the leading or main purpose of the promisor (Schmitz), must be to gain some personal advantage for him, or as in this case here, rather than to become the mere guarantor or surety of another's (Cocco's) debt, and the promise must be supported by a consideration directly beneficial to the promisor. *Id.* Cases that have considered the leading or main purpose rule look to the primary objective of the promisor in making the promise to repay a loan. *Id.* If the main purpose is to serve his own interests, the promise is held to be an original undertaking and enforceable. *Id.*

■ Here, for the oral promise to have been an original obligation, and, therefore, not covered by the statute of frauds: (1) credit must have been given to Cocco (promisee) by Schmitz (promisor) alone; (2) the main or leading purpose of Schmitz must have been to gain some personal advantage for herself; and (3) the promise must have been supported by a consideration directly beneficial to Schmitz. A review of the elements shows that Schmitz and Cocco's oral promise amounted to an original obligation. The evidence shows that Schmitz wanted a new couch and found one she liked in a Fingerhut catalog. Cocco ordered the couch and financed it with a Fingerhut credit card that would allow for a delay in payments. Apparently, Schmitz agreed to pay the Fingerhut debt when she received her tax refund. The couch was delivered to Schmitz's home for her use. Thus, Schmitz agreed to pay Cocco's debt to Fingerhut in order to get a

**2.** All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise indicated.

new couch. Because this court finds this oral agreement to be an original obligation, it is not covered by the Statute of Frauds. Point I is denied.

## II.

 Schmitz's remaining point asserts that the trial court erred in awarding Cocco $1,608.02 under Count II because the judgment is not supported by substantial evidence in that Cocco did not present any evidence establishing that he . loaned Schmitz $1,223.94 and that such sum was due and payable.

Count II sets out five separate loans: (1) $768.16, for car repairs Cocco had done on Schmitz's truck; (2) $1,233.94 (the loan at issue here); and (3) loans of $150, $50, and $50, for dog food and a vet bill (Schmitz was keeping Cocco's dog while he was in Korea).

The only information in the amended petition concerning the $1,233.94 loan was that it was made in October of 2000. No information about the loan is in the transcript and it is merely listed in Plaintiff's Exhibit 1. The court gave the following explanation in determining the damages on Count II:

> THE COURT: Yes—half of that, 768, because he agreed to pay half of it, and he was very fair about that, I felt. And then, I'm going to subtract the— the three loans for 150, 50, and 50. So that should give you a total.
>
> MR. OPIE: All right.
>
> THE COURT: And then that's just the best I could do with the case. I just can't tell for sure what's going on.

Based upon the court's explanation and award of $1608.02 in damages on Count II, it appears that the court included the $1,233.94 loan, and about half of the $768 in car repairs. Since there is not substantial evidence of the $1,233.94 loan in the

record, the judgment on this count should be reduced to $358.09.

The judgment of the trial court is affirmed as to Count III, the Fingerhut debt, but is reversed as to Count II, and remanded for the trial court to enter judgment for Cocco in the amount of $358.09. Costs are to be equally divided between the parties.

All concur.