

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| IN RE THE ESTATE OF ARTHUR E. PETHAN, DECEASED; | ) ) ) | |
| | ) | WD78157 |
| MARY LU BROWN, PERSONAL REPRESENTATIVE OF THE ESTATE OF ARTHUR E. PETHAN, DECEASED, | ) ) ) ) ) | OPINION FILED: September 22, 2015 |
| Respondent, | ) ) | |
| v. | ) ) | |
| DAVID A. HEIN, | ) ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cooper County, Missouri**
The Honorable Keith M. Bail, Judge

Before Division One:  Cynthia L. Martin, Presiding Judge, Joseph M. Ellis, Judge and
James E. Welsh, Judge

David A. Hein ("Brother") appeals a judgment that sanctioned him for discovery violations by striking his answer and affirmative defenses and that entered judgment in favor of Mary Lu Brown ("Sister") on one of two counts in Sister's petition seeking the discovery of assets in a probate proceeding.  Brother also appeals from an order granting

Sister's motions for bond forfeiture and civil contempt after Brother violated the terms of a consent order.

Because Brother's appeal from the sanctions judgment is moot, and because Brother has appealed an order that is not designated as a "judgment," we dismiss Brother's appeal.

## Factual and Procedural History

Arthur Pethan ("Pethan") died in November 2009. Brother and Sister were Pethan's heirs. Pethan's estate was opened on May 21, 2010. Sister was appointed as the personal representative for Pethan's estate on November 1, 2011.

On November 17, 2011, Sister filed a discovery of assets petition against Brother. Sister alleged in Count I that Brother had removed a tractor, farm equipment, and various furniture items ("Property") from Pethan's estate after Pethan's death and had executed a false bill of sale for the Property. Sister requested an award of punitive damages in Count II of the petition.

Sister filed a motion for sanctions against Brother on September 3, 2013, alleging discovery violations. Sister requested that Brother's answer be stricken, the entry of judgment in her favor on her petition, and an evidentiary hearing to calculate punitive damages and attorney's fees.

Following a hearing, the trial court entered its "Order Relating to Motion for Sanctions and Judgment" ("Sanctions Judgment") on November 1, 2013. The Sanctions Judgment sustained Sister's motion for sanctions, struck Brother's answer and affirmative defenses, and entered judgment "in favor of [Sister] and against [Brother] on Count I of

2

[Sister's] Petition for Discovery of Assets." The Sanctions Judgment ordered Brother to deliver the Property to Sister at the Cooper County Fairgrounds on November 30, 2013. The Sanctions Judgment scheduled a hearing for December 9, 2013, "to hear additional evidence as to damages" including "evidence regarding punitive damages . . . if [Brother] fails to deliver the [Property]" to Sister. The Sanctions Judgment thus resolved Count I of Sister's petition but reserved determination of Count II of Sister's petition.

Following entry of the Sanctions Judgment, Brother filed pleadings seeking to stay his obligation to deliver the Property, to continue the damages hearing, and to set aside the Sanctions Judgment.

On December 2, 2013, the trial entered a "Consent Order." The Consent Order directed that "[u]pon the agreement of the parties" Brother would deliver the Property to Sister by February 1, 2014; Brother would post a $20,000 bond by December 13, 2013,[1] which would be forfeited and paid to Sister if Brother failed to deliver the Property; and that the hearing on Sister's punitive damages claim would be continued until sometime after February 1, 2014. The Consent Order also reflected Brother's agreement to permit Sister to prove up her attorney's fees claim by the submission of an affidavit.

Brother delivered some of the Property to the Cooper County Fairgrounds on January 18, 2014, and delivered the balance of the Property by February 1, 2014. Sister thereafter secured the trial court's authority to sell the Property at auction.

---

[1]On December 13, 2013, the trial court entered a "Stipulation and Order" reiterating Brother's and Sister's agreements which led to entry of the Consent Order and which reflected the parties' further agreement to permit Brother until December 16, 2013, to post the agreed upon $20,000 bond.

3

After the auction, Sister filed a motion for bond forfeiture and a motion for contempt against Brother. Sister alleged that Brother had intentionally sabotaged some of the Property that was delivered, causing it to decline in value.

Following a hearing, the trial court entered an order on November 20, 2014, granting Sister's motions for bond forfeiture and contempt ("Order"). The Order noted the parties' agreements giving rise to the Consent Order. The trial court found that Brother had intentionally and willfully violated the trial court's previous orders and that Brother's conduct had resulted in a decrease in the fair market value of the Property by $7,500. The Order found Brother in contempt and fined him $5,000 "in order to compensate the Estate of Arthur Pethan for its actual damages and attorney's fees the estate has incurred in connection with [Sister's] Motions and to deter [Brother] from such conduct in the future." The Order directed that the amount of $12,500 "shall be paid from the $20,000 bond [Brother] previously posted with the Court," with the $7,500 balance of the bond to be refunded to Brother.

On November 26, 2014, Brother appealed. On December 15, 2014, Sister voluntarily dismissed Count II of her petition.

## Analysis

Brother asserts two points on appeal. In his first point, Brother claims that the Sanctions Judgment was entered in error because Sister failed to establish she was prejudiced by Brother's discovery violations. In his second point, Brother claims that the Order was entered in error because Sister's motions to forfeit the bond and for contempt

4

were barred by the doctrine of laches. Both points require that we first discern whether we may entertain Brother's appeal.

"Prior to reaching the merit of the issues in this case, this Court must determine, *sua sponte*, if there is a final judgment." *Ndegwa v. KSSO, LLC*, 371 S.W.3d 798, 801 (Mo. banc 2012) (citing *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997)). A final judgment is a prerequisite to appellate review." *Id.* If the circuit court's judgment was not a final judgment, then the appeal must be dismissed." *Id.* "A final judgment 'resolves all issues in a case, leaving nothing for future determination.'" *Id.* (quoting Gibson, 952 S.W.2d at 244). "Damages are an essential element of a claim and must be resolved for a judgment to be final and appealable." *Crest Const. II, Inc. v. Hart*, 439 S.W.3d 246, 249 (Mo. App. W.D. 2014) (internal quotations omitted). Moreover, "[a]s a threshold matter, appellate courts must determine if a controversy is moot." *Dotson v. Kander*, 435 S.W.3d 643, 644 (Mo. banc 2014) (citing *State ex rel. Reed v. Reardon*, 41 S.W.3d 470, 473 (Mo. banc 2001)). An appellate court is obligated to examine an appeal for mootness "either upon motion of a party or acting *sua sponte*." *Missouri Municipal League v. State*, No. SC94493, 2015 WL4627486, at *1 (Mo. banc August 4, 2015). "Mootness implicates the justiciability of a controversy and is a threshold issue to appellate review." *LeBeau v. Commissioners of Franklin County*, 459 S.W.3d 436, 438 (Mo. banc 2015) (citing *Reed*, 41 S.W.3d at 473). "To exercise appellate jurisdiction, there must be an actual controversy that is 'susceptible of some relief.'" *Dotson*, 435 S.W.3d at 644 (quoting *Reed*, 41 S.W.3d at 473). "When an event occurs which makes a

5

court's decision unnecessary or makes granting effectual relief impossible, the case is moot and should be dismissed." *Id.*

Point one of Brother's appeal claims error with respect to entry of the Sanctions Judgment. By its plain terms, the Sanctions Judgment did not resolve all issues, as it expressly reserved determination of Count II of Sister's petition. The Sanctions Judgment was not, therefore, a final judgment at the time Brother filed his appeal. *Crest Const. II, Inc.*, 439 S.W.3d at 249.

We recognize that Sister dismissed Count II of her petition nearly a month after Brother filed his appeal. And we recognize that there is authority for the proposition that a party's voluntary dismissal of remaining claims or parties following entry of an interlocutory judgment can render the interlocutory judgment final for purposes of appeal. *See Bailey v. Innovative Management & Inv., Inc.*, 890 S.W.2d 648, 649-50 (Mo. banc 1994) (finding that an interlocutory summary judgment in favor of one defendant became final and appealable when the plaintiff later voluntarily dismissed the remaining defendant); *Magee v. Blue Ridge Professional Bldg. Co., Inc.*, 821 S.W.2d 839, 842 (Mo. banc 1991) (finding that an interlocutory order dismissing claims against one defendant became final and appealable when the plaintiff later voluntarily dismissed claims against all remaining defendants).

Assuming, *arguendo*, that Sister's *post-appeal* voluntary dismissal of Count II of her petition converted the interlocutory Sanctions Judgment into a final judgment, and

assuming that Rule 81.05(b)[2] would thus apply to require us to consider Brother's premature appeal as having been filed immediately after the Sanctions Judgment became final, Brother's claim of error regarding the Sanctions Judgment must nonetheless be dismissed. Brother's voluntary agreement to, and performance of, the terms of the Consent Order constituted voluntary performance of the Sanction's Judgment, rendering Brother's claim of error relating to the Sanctions Judgment moot.

The Sanctions Judgment ordered Brother to deliver the Property that was the subject of the discovery of assets claim to a particular location by a particular date. The Sanctions Judgment ordered a hearing on Sister's remaining claim for punitive damages, and on her claim for an award of attorney's fees. Brother contested the Sanctions Judgment and filed a motion to set it aside, sought continuances of the damages hearing, and sought a continuance of the deadline for delivery of the Property.

Thereafter, the trial court entered the Consent Order based on the agreement of the parties. Pursuant to the Consent Order, Brother voluntarily agreed to deliver the Property to a specified location by February 1, 2014, and to post a bond to ensure his performance of this obligation. Sister agreed to defer a hearing on her punitive damage claim until sometime after the date agreed upon for delivery of the Property. And both parties agreed that Sister's attorney's fee claim could be ruled by the trial court based on submitted affidavits. The Consent Order represented "a recital of an agreement," and "not a judicial determination of rights." *Henze v. Schallert*, 92 S.W.3d 317, 319 (Mo. App. E.D. 2002). More to the point, the Consent Order represented Brother's voluntary

---

[2]All citations to the Rules are to *Missouri Court Rules Volume I--State* (2015).

7

agreement to the manner in which he would perform the obligation to deliver the Property described in the Sanctions Judgment.

"[A] party may estop himself from taking an appeal by performing acts after the rendition of the order or judgment which are clearly inconsistent with the right of appeal." *Stevens Family Trust v. Huthsing*, 81 S.W.3d 664, 667 (Mo. App. S.D. 2002) (internal quotations omitted). "The estoppel may consist of any voluntary act which expressly or impliedly recognizes the validity of the judgment, order or decree." *Id.* "Accordingly, it is also generally recognized that when a defendant voluntarily pays a judgment rendered against him, he may not appeal from that judgment." *Id.* "When the judgment has been paid, the issue is settled and the question is moot." *Id.*

"An involuntary payment, however, does not render an appeal moot." *Two Pershing Square, L.P. v. Boley*, 981 S.W.2d 635, 638 (Mo. App. W.D. 1998). "A payment is considered involuntary when it is made to forestall collection and no supersedeas bond is posted." *Id.* "A payment is also considered involuntary when it is made after execution or writ of garnishment in aid of execution has issued because it is presumed to have been made as a result of legal coercion." *Id.* "A payment made to cut off the accrual of interest on a judgment is also considered involuntary." *Id.*

Brother's agreement to the terms of the Consent Order, and his delivery of the Property pursuant to the terms of the Consent Order, were not in response to collection procedures or to any attempt to enforce the Sanctions Judgment by execution or garnishment. The Sanctions Judgment did not provide for the accrual of interest, rendering it unnecessary for Brother to enter into the Consent Order or to deliver the

8

Property to cutoff the accrual of interest. Rather, Brother voluntarily agreed to terms by which he would perform the obligation to deliver the Property described in the Sanctions Judgment. By agreeing to the terms set forth in the Consent Order, and by proceeding to perform the terms of the Consent Order, Brother impliedly recognized the validity of the Sanctions Judgment. *Braveheart Real Estate Co. v. Peters*, 157 S.W.3d 231, 233-34 (Mo. App. E.D. 2004) (holding that "[i]f the defendant's surrender of . . . property is voluntary, he or she effectively concedes the correctness of the judgment, thereby rendering the appeal moot").

In his Reply Brief, Brother nonetheless argues that his delivery of the Property was involuntary. He claims that he was legally coerced into delivering the Property because he otherwise would have been found in contempt of court and exposed to punitive damages.[3] We disagree. No contempt proceedings were pending when Brother agreed to the terms of the Consent Order. In any event, even had they been, a similar argument was rejected in *Peters*, when the Eastern District found that the surrender of real property upon threat of contempt constituted a voluntary act. *Peters*, 157 S.W.3d at 233-34.

In short, Brother voluntarily agreed to entry of the Consent Order, which included his agreement to deliver the Property to Sister. Brother thus impliedly recognized the validity of the Sanctions Judgment. Brother thereafter delivered the Property as he agreed to do pursuant to the Consent Order. The Property has been sold at auction. The

---

[3]Brother also argues that he had no choice but to comply with the Sanctions Judgment because it was not a final judgment and could not be appealed given Sister's outstanding punitive damages claim. This argument in Brother's Reply Brief is in stark and irreconcilable conflict with the jurisdictional statement in Brother's principle Brief where Brother argues that the Sanctions Judgment is a final, appealable judgment.

relief awarded by the Sanctions Judgment has been voluntarily performed. Any decision from this court resolving Brother's current complaint that the Sanctions Judgment was improvidently entered would have no practical effect, rendering Brother's first point on appeal moot.[4]

Point one is dismissed as moot.

Point two of Brother's appeal claims error in the entry of an Order granting Sister's motions for bond forfeiture and contempt because both motions should have been barred by the doctrine of laches.

Rule 74.01(a) states that a "[j]udgment . . . includes a decree and any order from which an appeal lies" and that "[a] judgment is entered when a writing signed by the judge and denominated 'judgment' or 'decree' is filed." "Thus, a written judgment must be signed by the judge and must be designated a 'judgment.'" *City of St. Louis v. Hughes*, 950 S.W.2d 850, 853 (Mo. banc 1997). "The designation of 'judgment' may occur at the top of the writing, within the body of the writing, or in a docket-sheet entry, but it must be clear from the writing that the trial court is calling the document or docket-sheet entry a judgment." *Id*. Generally, an appeal from an order that is not designated as a "judgment" must be dismissed. *See Gateway Directory Pub. Group, Inc. v. Fischer*, 84 S.W.3d 496, 497 (Mo. App. E.D. 2002) (dismissing an appeal from an order that was not designated as a "judgment.")

---

[4]There are recognized exceptions to the mootness doctrine where a case becomes moot after it is argued and submitted or where a case presents an unsettled issue of public interest that is likely to recur and to evade review. *Floyd v. Department of Mental Health*, 452 S.W.3d 154, 158 (Mo. App. W.D. 2014). Neither exception applies here.

10

It is true that pursuant to Rule 41.01(b), "[t]he provisions of Rule 74 are not applicable to probate proceedings . . . unless the judge of the probate division orders that it shall be applicable in a particular matter . . . ." *In Estate of Downs*, 400 S.W.3d 360, 361 (Mo. App. W.D. 2013) (citing Rule 41.01(b)); *Burgess, Care & Treatment of v. State*, 34 S.W.3d 430, 431 n. 2 (Mo. App. S.D. 2000). Here, the trial court entered an order on February 24, 2011, directing that Rules 41 through 101 were applicable to the proceedings. It was thus essential that the Order comply with Rule 74.01(a) as a condition to Brother's right to appeal the Order.[5]

Plainly, the Order is not designated a "judgment," and there is no indication within the body of the Order that the trial court considered the Order to be a judgment. The Order is not appealable.[6]

Point two is dismissed.

---

[5]Even where this not the case, Brother has not explained how or whether the Order falls within one of the categories of immediately appealable probate orders enumerated by section 472.160.1(1)-(14).

[6]The Order granted two motions--Sister's motion for bond forfeiture and Sister's motion for an order holding Brother in contempt. Contempt orders are not exempt from Rule 74.01(a)'s "denomination as a judgment" requirement. However, civil contempt orders, even if denominated as a "judgment," are not final for purposes of appeal until they are enforced, either through the imposition of fines or imprisonment. *In re Marriage of Crow and Gilmore*, 103 S.W.3d 778, 781 (Mo. banc 2003). Here, the record does not reveal whether the contempt portion of the Order (which ordered the payment of a $5,000 fine to Sister from the bond Brother posted) has been enforced.

More to the point, as Brother notes in his Brief, the $5,000 fine imposed for contempt was not "for the purpose of coercing compliance with relief that had already been granted . . . but [was] instead awarded to punish [Brother] for failing to comply with the court's order." [Appellant's Brief, p. 19] This calls into question whether the Order found Brother to be in civil or criminal contempt. "Civil contempt is intended to benefit a party for whom an order, judgment, or decree was entered. Its purpose is to coerce compliance with the relief granted." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 578 (Mo. banc 1994). In contrast, criminal contempt is authorized as a part of a court's inherent constitutional power and by section 476.110 to punish a person's refusal to abide by a court's authority as to protect the dignity of the judicial system. *See Smith v. Pace,* 313 S.W.3d 124, 129-30 (Mo. banc 2010); *Teefey v. Teefey*, 533 S.W.2d 563, 565 (Mo. banc 1976). A criminal contemnor has no right of appeal. *Smith*, 313 S.W.3d at 129.

We express no opinion as to whether the contempt aspect of the Order can be appealed, even assuming the Order is hereinafter designated as a "judgment."

## Conclusion

Brother's appeal is dismissed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur.

12