

# In the Missouri Court of Appeals
## Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| KAREN COBURN, | ) | No. ED108948 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | Cause No. 1922-CC0922 |
| | ) | |
| | ) | Honorable Michael F. Stelzer |
| KRAMER & FRANK, P.C., | ) | |
| | ) | |
| Respondent. | ) | Filed: March 9, 2021 |

Karen Coburn ("Coburn" or "Appellant") appeals the circuit court's judgment granting Kramer & Frank, P.C.'s ("Kramer & Frank" or "Respondent") Motion for Judgment on the Pleadings. Appellant raises one point on appeal, arguing that the circuit court erred in granting Respondent's Motion for Judgment on the Pleadings because no order specifically appointing the special process server who served her with the summons and petition in the underlying collection lawsuit was entered by the circuit court or the circuit clerk, and thus, the default judgment entered against her in the underlying collection lawsuit was void as a matter of law for lack of personal jurisdiction. Appellant also argues that she has stated claims for violations of the Missouri Merchandising Practices Act and for unjust enrichment.

We affirm.

## I. Factual and Procedural Background

*Coburn's Class Action Lawsuit against Kramer & Frank*

On May 6, 2019, Coburn commenced this lawsuit in the Circuit Court of the City of St. Louis by filing her two-count *Class Action Petition* against Kramer & Frank, a "collection law firm" in Missouri (the "Class Action Case"). On behalf of herself and a group of similarly-situated individuals, Coburn asserts violations of the Missouri Merchandising Practices Act (§ 407.010[1] *et seq.*) (the "MMPA") and a claim for unjust enrichment arising from Kramer & Frank's alleged "misuse of court process to obtain default judgments against Coburn and over 100 putative class members."

At the core of her MMPA and unjust enrichment claims, Coburn alleges that Kramer & Frank, on behalf of its clients, obtained default judgments in certain collection lawsuits without first obtaining personal jurisdiction because the person who served her (and the other putative class plaintiffs) in these lawsuits was not properly appointed by the circuit court or the court clerk to serve process "as required by law," rendering the judgments void.[2] Specifically, in her MMPA claim, Coburn alleges that Kramer & Frank "engaged in deceptive and/or unfair practices … by taking default judgments against Coburn and the putative class members" in that "Kramer & Frank had not acquired personal jurisdiction over Coburn and the putative class members." In her unjust enrichment claim, she similarly alleges that "[i]t would be unjust to allow Kramer & Frank to retain the benefit of the default judgments and/or monies collected after said judgments were entered from Coburn and the putative class members because it

---

[1] All statutory references are to Mo. Rev. Stat. Cum. Supp. 2019, unless otherwise indicated.

[2] Although the Class Action Petition itself does not explain the specific basis upon which Coburn believed the process servers were not properly "appointed" in accordance with applicable law, in her subsequent briefing on Kramer & Frank's Motion for Judgment on the Pleadings, she further explains that the process servers were not properly "appointed" because neither the circuit court nor the circuit clerk entered an order in the cases expressly approving the requested special process servers, which she maintains is required under §§ 506.140 and 506.180.

received these benefits under the guise that Missouri courts had personal jurisdiction over Coburn and the putative class members when personal jurisdiction did not exist."

On these grounds, the Class Action Petition seeks class certification and that Coburn be appointed as class representative, as well as requests all available damages, attorneys' fees, costs, and pre- and post-judgment interest. More importantly, in both her MMPA and unjust enrichment claims, Coburn also requests the following specific relief: "[A]n order or judgment declaring that the judgments entered against Karen Coburn and the class members are void as a matter of law and ordering Kramer & Frank to set aside all such judgments."[3]

*The Underlying Collection Lawsuit* [4]

On April 14, 2014, Kramer & Frank, on behalf of its client Metropolitan Sewer District ("MSD"), commenced the underlying collection lawsuit against Coburn in the Circuit Court of the City of St. Louis, Associate Division (the "Collection Case"). In the Collection Case, MSD alleged that Coburn owed it a debt of $571.80 for overdue wastewater and stormwater charges levied pursuant to MSD Ordinances 13405 and 13466.

On April 14, 2014, Kramer & Frank, on behalf of MSD, filed a request to appoint Amy Post ("Post") as special process server in the Collection Case (the "SPS Request").[5] The SPS

---

[3] We note that Kramer & Frank could not be ordered to set aside the default judgments, as only the trial court could actually set aside the Default Judgment. *See* Rule 74.06(b) ("On motion and upon such terms as are just, the **court** may relieve a party or his legal representative from a final judgment or order…" (emphasis added)); *see also* Rule 74.06(d) ("This Rule 74.06 does not limit the power of the **court** to entertain an independent action to relieve a party from a judgment or order or to set aside a judgment for fraud upon the court." (emphasis added)).

[4] To the extent necessary, we have reviewed the pleadings and other filings in the underlying collection lawsuit and have taken judicial notice thereof, which we are permitted to do when the other court records are interwoven with the case *sub judice,* as they are in this case. *Branch v. State*, 531 S.W.3d 621, 623-24 (Mo. App. E.D. 2017); *Envtl. Utils., LLC v. Public Serv. Comm'n*, 219 S.W.3d 256, 265 (Mo. App. W.D. 2007).

[5] As explained in Footnote 14, even though MSD denominated this request as a "motion," we find that it was actually a request pursuant to § 506.140.1, which either the circuit court or circuit clerk could grant, notwithstanding § 506.050.

Request appears to be the only such request filed in the Collection Case, and thus, it does not appear that MSD requested the appointment of anyone other than Post as special process server.

Pursuant to the Local Rule 14.1[6], "[a]ny person appointed by the Court or the Circuit Clerk to serve process must have a license issued pursuant to this rule to serve process." Furthermore, "[t]he Sheriff of the City of St. Louis shall maintain a list of persons licensed to serve process pursuant to this rule, and shall make such list available to litigants upon request." Local Rule 14.4. In addition, the Local Rule regarding applications to become a special process server provides as follows: "Applications for the appointment of a special process server shall be made on forms available in the offices of the Sheriff and Circuit Clerk. Orders [a]ppointing special process servers may list more than one licensed server as alternatives." Local Rule 14.9. Although the record does not contain conclusive evidence in this regard, it appears that Post was on the list of licensed process servers maintained by the Sheriff of the City of St. Louis at the time MSD filed the SPS Request in the Collection Case.

Although the SPS Request contained a signature line for the trial judge to sign, no signed copy of the same appears in the court's file in the Collection Case. However, a docket entry was entered in the Collection Case on April 14, 2014, the same date the SPS Request was filed, which reflects that "Summons 3534" was issued for Coburn. The Circuit Clerk of the City of St. Louis at the time, M. Jane Schweitzer, thereafter issued a signed summons to Coburn in the Collection Case, dated April 21, 2014 (the "Summons"). Although the Summons did not expressly include Post's name therein, it did say "SPECIAL" next to Coburn's name. The Summons directed Coburn to appear and answer the petition on May 13, 2014 at 9:30 a.m.

---

[6] All "Local Rule" citations are to the rules adopted by the Circuit Court of the City of St. Louis. All other rule citations are to the Missouri Supreme Court Rules (2019).

4

The record reflects and there does not appear to be any dispute that on April 28, 2014, Post served a copy of the Summons and the petition in the Collection Case on Coburn by leaving a copy of the same with her son (who was over the age of 15) at the address stated on the Summons. On May 5, 2014, MSD filed a return of service with the Circuit Court, which was signed by Post and notarized. Coburn does not contest that she received actual notice of the Summons and petition in the Collection Case.

The record reflects and there also does not appear to be any dispute that Coburn did not appear on May 13, 2014, or file a responsive pleading in the Collection Case. Thus, MSD, through its attorney, Kramer & Frank, obtained a default judgment against Coburn (the "Default Judgment"). On May 28, 2014, Kramer & Frank filed a Transcript of Judgment in the Collection Case on behalf of MSD, which reflected a principal amount of $513.57, attorney fees of $85.77, and court costs of $148.00, for a total amount of $747.34.

The record reflects and there does not appear to be any dispute that *after* the Default Judgment was entered and the Transcript of Judgment was filed in the Collection Case, Coburn paid "over $500.00" to Kramer & Frank to satisfy the Default Judgment. The record does not contain any evidence that Kramer & Frank engaged in any other post-judgment collection activity with respect to Coburn. On February 4, 2015, Kramer & Frank, on behalf of MSD, filed a satisfaction of judgment, which confirmed that the Default Judgment had been satisfied.[7]

*Kramer & Frank's Answer and Motion for Judgment on the Pleadings in the Class Action Case*

On July 15, 2019, Kramer & Frank timely filed its answer to the Class Action Petition, which denied any liability to Coburn and asserted several affirmative defenses thereto.

---

[7] It is also worth noting that the record does not contain any evidence that Coburn has ever filed a motion to set aside the Default Judgment pursuant to Rule 74.05(d) or Rule 74.06(b) in the Collection Case, nor does Coburn assert that she has ever filed such a motion. Likewise, the record does not contain any evidence that Coburn has ever filed any kind of separate action against MSD attacking the validity of the Default Judgment on any grounds, nor does Coburn assert that she has ever filed any such action against MSD.

On September 19, 2019, Kramer & Frank filed its Motion for Judgment on the Pleadings and supporting memorandum, arguing that it was entitled to judgment as a matter of law based on the pleadings and the undisputed facts. Specifically, Kramer & Frank argued that Coburn cannot collaterally attack the Default Judgment because she is estopped from doing so in that she has satisfied it, thereby recognizing the validity of the underlying debt and Default Judgment, which renders the Class Action Case moot. Kramer & Frank also argued that the underlying premise of Coburn's claims—that neither the circuit court nor the circuit clerk approved the appointment of Post—is false and fails as a matter of law. Finally, Kramer & Frank argued that the Class Action Petition fails to state a valid claim under the MMPA or for unjust enrichment.

After full briefing and a hearing thereon, by "Order and Judgment" dated April 1, 2020, the circuit court granted Kramer & Frank's Motion for Judgment on the Pleadings and entered judgment in favor of Kramer & Frank and against Coburn in the Class Action Case.[8]

This appeal follows.

## II.      Standard of Review

Since a motion for judgment on the pleadings addresses a question of law, our review is *de novo*. *Emsweller v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, 591 S.W.3d 495, 498 (Mo. App. E.D. 2019); *see also Woods v. Mo. Dep't of Corr.*, 595 S.W.3d 504, 505 (Mo. banc 2020). "For purposes of the motion, the moving party admits the truth of well-pleaded facts in the opposing party's pleadings." *Emsweller*, 591 S.W.3d at 498 (quoting *City of Dardenne Prairie v. Adams Concrete & Masonry, LLC*, 529 S.W.3d 12, 17 (Mo. App. E.D. 2017)). A motion for judgment on the pleadings should be granted if, "from the face of the pleadings, the

---

[8] Although the issue of Coburn's prior payment of the Default Judgment was raised in the parties' briefing, the circuit court did not squarely address Kramer & Frank's estoppel/mootness argument in its Order and Judgment, and instead dismissed the Class Action Petition on the basis of Kramer & Frank's substantive arguments, as further explained herein below.

moving party is entitled to judgment as a matter of law." *Woods*, 595 S.W.3d at 505 (quoting *Madison Block Pharmacy, Inc. v. U.S. Fid. & Guar. Co.*, 620 S.W.2d 343, 345 (Mo. banc 1981)).

When reviewing the grant of a motion for judgment on the pleadings, "[w]e are entitled to affirm on any ground sufficient to sustain the judgment and are not limited to the grounds relied on by the trial court." *Felling v. Giles*, 47 S.W.3d 390, 393 (Mo. App. E.D. 2001). We will affirm the circuit court's judgment "if it is deemed correct under any reasonable theory supported by all of the evidence." *Id*. (quoting *Tip-Top Plumbing Co. v. Ordemann*, 946 S.W.2d 786, 790 (Mo. App. W.D. 1997)). This is because we are "primarily concerned with the correctness of the result, and not the route taken by the trial court to reach it." *Id*. (citing *Corrigan v. Armstrong, Teasdale, et al.*, 824 S.W.2d 92, 94 (Mo. App. E.D. 1992)).

## III. Discussion

### *Introduction*

Coburn raises one point on appeal, arguing that the circuit court erred in granting Kramer & Frank's Motion for Judgment on the Pleadings because Missouri law requires that an order of the circuit court or the circuit clerk be entered appointing a special process server in order for service by a process server to be valid. In this case, Coburn argues that no such order specifically appointing Post was entered in the Collection Case, and thus, the Default Judgment is void as a matter of law for lack of personal jurisdiction, even though she does not allege lack of actual notice. Coburn also argues that she has stated claims for violations of the MMPA and for unjust enrichment.

However, before we can address the merits of Coburn's point on appeal, we must first address the threshold issue of Coburn's undisputed satisfaction of the Default Judgment, which

7

Kramer & Frank argues estops her from collaterally attacking the Default Judgment in this case, and thereby renders her claims in the Class Action Case moot. This issue was raised in Kramer & Frank's Motion for Judgment on the Pleadings and was again argued in its brief to this Court. Regardless, this is an issue we can and should address *sua sponte*.

*Mootness and Justiciability*

A threshold inquiry in any appellate review of a controversy is mootness of the controversy. *TCF, LLC v. City of St. Louis*, 402 S.W.3d 176, 181 (Mo. App. E.D. 2013); *accord Floyd v. Dep't of Mental Health*, 452 S.W.3d 154, 157 (Mo. App. W.D. 2014). "The existence of an actual and vital controversy susceptible of some relief is essential to appellate jurisdiction." *Floyd*, 452 S.W.3d at 157 (quoting *In re C.T.*, 432 S.W.3d 283, 285 (Mo. App. E.D. 2014)). "With respect to justiciability, a case is moot if a judgment rendered has no practical effect upon an existent controversy." *TCF, LLC*, 402 S.W.3d at 181. Furthermore, because mootness implicates the justiciability of a case, we may dismiss a case for mootness *sua sponte*. *Id*. "In determining whether a case is moot, we may consider matters outside the record." *Id*.

"When an event occurs that makes a decision on appeal unnecessary or makes it impossible for the appellate court to grant effectual relief, the appeal is moot and generally should be dismissed." *Id*.; *see also Two Pershing Square, L.P. v. Boley*, 981 S.W.2d 635, 638 (Mo. App. W.D. 1998) (similarly recognizing that, "[a] case must be dismissed as moot whenever an event occurs that renders a decision unnecessary"). Specifically, "[a] party may estop himself from taking an appeal by performing acts after the rendition of the order or judgment which are clearly inconsistent with the right of appeal." *In re Estate of Pethan*, 475 S.W.3d 722, 727 (Mo. App. W.D. 2015) (quoting *Stevens Family Trust v. Huthsing*, 81 S.W.3d 664, 667 (Mo. App. S.D. 2002)); *accord Two Pershing Square*, 981 S.W.2d at 638. "The

8

estoppel may consist of any voluntary act which expressly or impliedly recognizes the validity of the judgment, order or decree." *In re Estate of Pethan*, 475 S.W.3d at 727 (internal quotations omitted).

"Generally, the voluntary satisfaction of a judgment renders any appeal from that judgment moot." *Two Pershing Square*, 981 S.W.2d at 638; *see also Kinser v. Elkai*, 654 S.W.2d 901, 903 (Mo. banc 1983) ("The rule is that when a defendant voluntarily pays a judgment rendered against him, he may not appeal from that judgment."). This is because, "[w]hen the judgment has been paid, the issue is settled and the question is moot." *In re Estate of Pethan*, 475 S.W.3d at 727.

However, "[a]n involuntary payment … does not render an appeal moot." *Id.*; *accord Two Pershing Square*, 981 S.W.2d at 638. "A payment is considered involuntary when it is made to forestall collection and no supersedeas bond is posted." *Two Pershing Square*, 981 S.W.2d at 638 (internal quotations omitted). "A payment is also considered involuntary when it is made after execution or writ of garnishment in aid of execution has issued because it is presumed to have been made as a result of legal coercion." *Id.* (citing *Kinser*, 654 S.W.2d at 903). Likewise, "[a] payment made to cut off the accrual of interest on a judgment is also considered involuntary." *Id.*

In this case, however, we are faced with the procedural difference that Coburn is not *directly* attacking the entry of the Default Judgment against her (or appealing therefrom), which she theoretically could have done via a motion to set aside the Default Judgment pursuant to Rule 74.05(d) and/or Rule 74.06(b). As noted, the record does not contain any evidence that Coburn has ever filed such a motion in the Collection Case, nor does Coburn claim that she has

9

ever filed such a motion.[9] Rather, Coburn appears to be launching a "collateral attack" on the Default Judgment via her Class Action Petition in this matter, which, as noted, asserts that the Default Judgment is void as a matter of law because Post was not properly appointed by the circuit court or the circuit clerk in the Collection Case in accordance with applicable law.

"Where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or reversed or modified or by a proceeding in equity to prevent its enforcement, the attack is a 'collateral attack.'" *M.W. v. S.W.*, 539 S.W.3d 910, 918 (Mo. App. E.D. 2017) (quoting *Reimer v. Hayes*, 365 S.W.3d 280, 283 (Mo. App. W.D. 2012)). A "collateral attack" is also "an attempt to impeach a judgment in a proceeding not instituted for the express purpose of annulling the judgment." *Id*. However, "[a] judgment rendered by a court having jurisdiction of the parties and subject matter is not open to collateral attack in respect of its validity or conclusiveness of the matters adjudicated." *Id*.

In this case, we find that the Class Action Petition constitutes a textbook "collateral attack" on the Default Judgment in that the core allegation of both the MMPA and unjust enrichment claims is that the Default Judgment is void as a matter of law for lack of personal jurisdiction. At oral argument Coburn's counsel expressly admitted that the Class Action Petition is indeed an attempt to "impeach" the Default Judgment.

As noted, shortly after obtaining the Default Judgment, Kramer & Frank, on behalf of MSD, filed a transcript of the judgment in connection with the Collection Case, which became a lien on Coburn's property pursuant to § 511.440 and Rule 74.13. *See City of Belton v. Cmty. Bank, N.A.*, 863 S.W.2d 345, 346 (Mo. App. W.D. 1993). In addition, *after* the Default Judgment

---

[9] We note, parenthetically, that a motion to set aside a default judgment under Rule 74.05(d) must be made "within a reasonable time not to exceed one year after the entry of the default judgment." Likewise, a motion to set aside a default judgment under Rule 74.06(b) on the grounds that the judgment is "void" must be filed within a "reasonable time." Rule 74.06(c). Otherwise, such a motion must be filed within one year of its entry for the grounds stated in Rule 74.06(b)(1) – (3), including irregularity. *Id*.

was entered and the Transcript of Judgment was filed in the Collection Case, it is undisputed that Coburn paid "over $500.00" to Kramer & Frank to satisfy the Default Judgment. However, other than filing the Transcript of Judgment, the record does not contain any evidence that Kramer & Frank engaged in any post-judgment collection activity with respect to Coburn. On February 4, 2015, Kramer & Frank, on behalf of MSD, filed a satisfaction of judgment in the Collection Case, which confirmed that the Default Judgment had been satisfied.[10]

While Coburn satisfied the Default Judgment shortly after it was entered five years ago, it would be difficult to conclude that her satisfaction was voluntary under these facts. *See Kinser v. Elkadi*, 654 S.W.2d 901, 903 (Mo. banc 1983) ("The inference is strong that a judgment paid after execution or garnishment has issued was paid as a result of legal coercion."); *see also Ryan v. Engelke*, 285 S.W.2d 6, 11 (Mo. App. 1955) ("It is generally held that one against whom a judgment or decree has been rendered for a sum of money does not, by paying and satisfying it under circumstances amounting to compulsion, waive or lose his right to have it reviewed upon a writ of error or appeal."). Accordingly, we find that Coburn's satisfaction of the Default

---

[10] We also note that in its suggestions in support of its Motion for Judgment on the Pleadings, Kramer & Frank represented to the trial court that it "expects the evidence to show that Coburn paid the judgment voluntarily by entering a payment arrangement with Kramer [& Frank] even before the court entered judgment and then paying [sic] monthly until she paid it in full and Kramer satisfied the judgment." However, it appears that Kramer & Frank did not offer, and the trial court did not receive, any evidence in support of this representation. In the argument section of its brief to this Court, Kramer & Frank referenced the foregoing representation to the trial court, but did not point to any evidence in the record supporting the same. Thus, although we are generally permitted to consider matters outside the record in determining the issue of mootness, *TCF, LLC*, 402 S.W.3d at 181, we cannot consider these unsupported representations in addressing Kramer & Frank's mootness and estoppel argument. *See McDonald v. Thompson*, 35 S.W.3d 906, 909 (Mo. App. S.D. 2001) (recognizing that, "appellate courts do not look to pleadings as evidence, … and will not accept counsel's statements as a substitute for record proof," and further noting that "[r]ecitals in motions and statements in briefs, when unsupported by the record and not conceded by a party's adversary, are not evidence; as such, they are insufficient to supply essential matters for review" (internal citations omitted)).

Judgment was involuntary within the meaning of the mootness doctrine, and thus, this case is not moot.[11]

Thus, having determined that Coburn's collateral attack on the judgment is not barred as moot, we now turn to the merits of her point on appeal.

*Analysis of the Merits of Appellant's Point on Appeal*

"As a general rule a judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment in respect to its validity or binding effect in any collateral proceeding." *La Presto v. La Presto*, 285 S.W.2d 568, 570 (Mo. 1955) (citing 49 C.J.S., Judgments, § 401, among other authorities). "But a judgment which is void on the face of the record is entitled to no respect, and may be impeached at any time in any proceeding in which it is sought to be enforced or in which its validity is questioned by anyone with whose rights or interests it conflicts." *Id.*

"Proper service of process must be accomplished before a court can obtain jurisdiction over the person or property of a defendant." *Reisinger v. Reisinger*, 39 S.W.3d 80, 83 (Mo. App. E.D. 2001). However, "[s]atisfying minimum standards of due process does not obviate the necessity of serving process in the manner prescribed in our statutes and rules." *Id.* (quoting *Acapolon Corp. v. Ralston Purina Co.*, 827 S.W.2d 189, 196 (Mo. banc 1992)). "[A] personal judgment rendered by a court without personal jurisdiction over a defendant is void and may be attacked collaterally." *Maul v. Maul*, 103 S.W.3d 819, 821 (Mo. App. E.D. 2003) (quoting

---

[11] Regardless, even if Coburn's satisfaction of the Default Judgment was deemed voluntary (thereby rendering her collateral attack on the Default Judgment moot), we could still exercise our discretion to review the merits of her point on appeal under the "public interest" exception to the mootness doctrine. Specifically, this exception permits substantive review if the case presents an issue that: (1) is of general public interest; (2) will recur; and (3) will evade appellate review in future live controversies. *See, e.g., In re Dunn*, 181 S.W.3d 601, 604 (Mo. App. E.D. 2006); *McNeil-Terry v. Roling*, 142 S.W.3d 828, 832 (Mo. App. E.D. 2004).

*Crouch v. Crouch*, 641 S.W.2d 86, 90 (Mo. banc 1982)) (bracketed material in original); *accord Hirst v. Cramer*, 195 S.W.2d 738, 740 (Mo. banc 1946). "[A] default judgment, being void due to lack of jurisdiction, remains void forever and any kind of proceeding to cancel it is proper." *Hill Behan Lumber Co. v. Bankhead*, 884 S.W.2d 318, 322 (Mo. App. E.D. 1994) (citing *Gerding v. Hawes Firearms Co.*, 698 S.W.2d 605, 607 (Mo. App. E.D. 1985)).

On the other hand, "[i]t is a part of our law that a defect in the form of a summons does not render the summons fatal nor deprive a court of jurisdiction." *Hometown Lumber & Hardware, Inc. v. Koelling*, 816 S.W.2d 914, 916 (Mo. banc 1991). Thus, "where the service is simply defective or irregular, the judgment rendered is not void, but only subject to being set aside by the Court which gave it, upon proper and reasonable application…." *Hirst*, 195 S.W.2d at 740. Furthermore, extrinsic evidence is generally inadmissible to collaterally attack a judgment valid on its face. *State ex rel. Rhine v. Montgomery*, 422 S.W.2d 661, 663 (Mo. App. 1967).

Where the facts as to jurisdiction are undisputed, or agreed upon, and reveal whether the court lacks personal jurisdiction over the defendant, then the court must so declare as a matter of law in a collateral proceeding. *Id.* (citing *Edwards v. Hrebec*, 414 S.W.2d 361, 364 n.4 (Mo. App. 1967)). "[W]hether a judgment should be vacated because it is void is a question of law that is reviewed *de novo*." *Christianson v. Goucher*, 414 S.W.3d 584, 588 (Mo. App. W.D. 2013).

"Courts favor finality of judgments, so the concept of a void judgment is narrowly restricted." *Id.* (quoting *Sieg v. Int'l Envtl. Mgmt., Inc.*, 375 S.W.3d 145, 149 (Mo. App. W.D. 2012)). "This restriction is necessary to protect the strong public policy interest in the finality of judgments." *Forsyth Fin. Grp., LLC v. Hayes*, 351 S.W.3d 738, 740 (Mo. App. W.D. 2011).

Moreover, "[a] judgment is not void merely because it is erroneous." *Id*. "In cases where personal and subject matter jurisdiction are established, a judgment should not be set aside unless the court 'acted in such a way as to deprive the *movant* of due process.'" *Id*. at 741 (citing *State ex rel. Koster v. Walls*, 313 S.W.3d 143, 145 (Mo. App. W.D. 2010)) (emphasis in original).

As the relevant facts in this case are not in dispute, we are essentially left to decide one core legal question with respect to the circuit court's personal jurisdiction over Coburn in the Collection Case: whether the "appointment" of a special process server pursuant to § 506.140.1 and Rule 54.01 requires the circuit judge or the circuit clerk to enter an order granting a plaintiff's motion requesting the appointment of a designated or nominated special process server, or whether the "appointment" may occur by the circuit clerk simply issuing an appropriate summons. If the issuance of an appropriate summons by the circuit clerk is all that is necessary under § 506.140.1 or Rule 54.01, a corollary question is whether such an "appointment" can be accomplished by a summons that does not name the designated or nominated special process server, but rather, simply states: "SPECIAL." These questions appear to present issues of first impression in Missouri.

Since service of process in connection with properly commencing a civil lawsuit is a practice that has deep roots in the constitutionally-protected notion of "due process," our determination of these questions is much more than an academic exercise in ministerial technicalities. Rather, this case implicates the manner in which a circuit court obtains personal jurisdiction over a defendant, which is a fundamental requirement for any plaintiff to obtain a valid civil judgment. *Reisinger*, 39 S.W.3d at 83; *Hirst*, 195 S.W.2d at 740; *see also Hometown Lumber & Hardware*, 816 S.W.2d at 916 ("Inherent in our law has long been the concept that the

14

underlying principle of a summons is to place a defendant on notice of an action filed against the defendant to enable the defendant to appear and defend against the action.").

Thus, if the circuit court in the Collection Case did not obtain personal jurisdiction over Coburn, then the Default Judgment would be void and subject to collateral attack. However, if the circuit court did obtain personal jurisdiction over Coburn, then it would not be subject to any collateral attack and should be dismissed. For the reasons set forth below, we hold that upon the face of the record in this case, the Default Judgment is not void as a matter of law, and thus, it is not subject to collateral attack because any defects or irregularities did not deny Coburn due process or otherwise violate applicable Missouri law to a sufficient degree to preclude jurisdiction.

The starting point for our analysis is § 506.140.1, which requires us to construe the term "appointed" as used therein. The relevant text of § 506.140.1 is as follows:

> Service of process, except as otherwise provided, shall be made by a sheriff … [or] coroner of the county in which such process is to be served; or some person, other than a sheriff or coroner, ***may be specially <u>appointed</u> by the court or the circuit clerk following procedures established by local court rules for service of process in any cause***, but such appointment shall be valid for service of the process only for which such person was specially appointed.

(Emphasis added).

In addition, Rule 54.01, which also governs service, provides in pertinent part as follows:

> (a) Upon the filing of a pleading requiring service of process, the clerk shall forthwith issue the required summons or other process.
> (b) The clerk shall deliver the summons or other process for service to:
>     (1) The sheriff or ***other person specially <u>appointed</u> to serve it***; or
>     (2) The party if the party files a request that the clerk deliver it to the
>
>         party.
>     * * *

(Emphasis added).

15

According to Coburn, in order for Post to have been properly "appointed" as special process server in the Collection Case pursuant to § 506.140.1 or Rule 54.01, either the circuit court or the circuit clerk was required to enter an order specifically granting Kramer & Frank's SPS Request, notwithstanding the fact that neither § 506.140.1 nor Rule 54.01 contains any such requirement. Coburn further argues that the order requirement actually derives from § 506.180. However, as its title suggests, § 506.180 only governs "proof of service," but does not address procedures for the appointment of special process servers. Specifically, Coburn relies on sub-section (2) of this statute, which provides as follows: "If service of such process is, *by **order** of the court*, directed to and delivered to a person, other than an officer, for service, such person shall make affidavit as to the time, place[,] and manner of his service thereof." Section 506.180.2. Thus, Coburn's argument rests on the phrase "by order of the court," as she suggests that this phrase effectively requires an order of the circuit court or circuit clerk in order for the "appointment" of a special process server to occur under § 506.140.1 or Rule 54.01.

Coburn previously raised this argument in her response to Kramer & Frank's motion for judgment on the pleadings, but the trial court considered and squarely rejected it, primarily relying on *Hirst v. Cramer*, 195 S.W.2d 738 (Mo. banc 1946), in dismissing the Class Action Case. Specifically, in its Order and Judgment granting Kramer & Frank's motion for judgment on the pleadings, the trial court cited the following noteworthy passage from *Hirst*:

> A defect in the form or matter of a summons or other process not absolutely destructive of its validity, or an irregularity or defect in the service of it upon defendant, although material and sufficient to cause the reversal of the judgment on a proper application, does not deprive the court of jurisdiction, and therefore does not expose the judgment to collateral impeachment. But where the defect in the process is so radical that it amounts to no process at all as where it wholly fails to give the party the information it is expected to convey, or where the attempted service is so faulty that it does not reach defendant at all, there is a want of jurisdiction, and the judgment will be impeachable collaterally.

16

*Id.* at 740 (quoting 34 C.J., Judgments, § 837).

The trial court ultimately found that "the undisputed facts relevant to the issue of personal jurisdiction do not reveal a lack of jurisdiction over the person of plaintiff in [the Collection Case]." Specifically, the trial court found that "the facts do not establish that Amy Post was not appointed"; rather, the circuit clerk in the Collection Case "intended to appoint Amy Post as special process server as requested, but the summons contains a defect in that it lists 'SPECIAL' instead of Amy Post as the process server." Thus, the trial court further found that "[t]his defect simultaneously renders Plaintiff's Petition insufficient to establish that Amy Post was not appointed, and would require extrinsic evidence to further determine whether the Clerk of the Court appointed Amy Post." Accordingly, the trial court concluded as follows: "Thus, Plaintiff's Petition is insufficient as a matter of law to establish that the default judgment in [the Collection Case] is void and subject to collateral attack in this proceeding."

We agree with the trial court's judgment and rationale. First, we recognize that it would have been better if in the Collection Case: (1) the circuit court had entered a signed copy of Kramer & Frank's request to appoint Post as special process server, and/or (2) the circuit clerk had specifically recited Post's name in the Summons (rather than simply stating "SPECIAL"). However, we believe that these omissions, at most, constitute a defect or irregularity in the form of the Summons, and thus, only subjected the Default Judgment to *potentially* being set aside via a timely motion pursuant to Rule 74.06(b)(3) on the grounds of irregularity.[12] Furthermore, we find that the face of the record in this case does not establish that Post was not appointed as special process server, and would require extrinsic evidence to establish otherwise, which is not permitted in a collateral attack. *State ex rel. Rhine*, 422 S.W.2d at 663. Rather, as the trial court

---

[12] However, we expressly decline to comment whether these defects or irregularities would constitute grounds to set it aside pursuant to Rule 74.06(b)(3), as that issue is not before this Court.

17

noted, it appears that the circuit clerk, in the Collection Case, intended to appoint Post, notwithstanding the aforementioned omissions. As noted, there was a docket entry in the Collection Case on April 14, 2014, the same day the SPS Request was filed, which reflected that "Summons 3534" was issued for Coburn.[13] Very simply, Coburn cannot point to any other logical conclusion from these undisputed record facts, and we do not see any other conclusion.

Second, while we agree that an executed order of the circuit court is indeed *one* way in which the appointment of a special process server can occur under § 506.140.1 (and perhaps the best way), we decline Coburn's invitation to hold that it is the *only* way to accomplish such an appointment. Stated alternatively, although a court order is adequate to appoint a special process server, it is not necessary. Specifically, we reject Coburn's argument that the language "by order of the court" contained in the statute governing return of service (§ 506.180) necessarily imposes such a requirement in the separate statute governing the appointment of process servers (§ 506.140). If the General Assembly had intended to impose such a requirement, it easily could have so stated in the plain language of § 506.140.1, rather than force litigants to divine such an intention from the incidental language in § 506.180.2. Accordingly, we find that the phrase "by order of the court" in § 506.180.2 is, at most, incidental to the appointment requirements plainly set forth in § 506.140.1, and thus, we hold that no such requirement can be construed to exist in § 506.140.1.

Moreover, even if such an intention could be found in § 506.180.2, we find that the language "by order of the court" is merely directory in nature, and thus, the aforementioned

---

[13] Coburn's proposed construction of § 506.140.1 also ignores *State ex rel. Polaris Industries, Inc. v. Journey*, 505 S.W.3d 370, 376 (Mo. App. W.D. 2016), which recognizes that, "[a] trial court's [unsigned] typewritten docket entry … qualifies as an 'order' under [Rule 74.02]." *Polaris* further recognizes that "nothing in Rule 74.02 requires an order to be handwritten or signed by the judge." *Id*. (citing *Norfolk v. State*, 200 S.W.3d 36, 39 (Mo. App. W.D. 2006)). Thus, although the April 14, 2014 docket entry is not dispositive because it does not specifically identify Post, it is still circumstantial evidence of an intent to appoint Post pursuant to § 506.140.1.

omissions of the circuit court and the circuit clerk in the Collection Case did not deprive it of personal jurisdiction over Coburn. *See Hometown Lumber & Hardware*, 816 S.W.2d at 915-16 (holding that the language "advise the defendant of pleadings required or permitted to be filed" contained in § 517.041.1 was not jurisdictional, but merely directory in nature).

Coburn makes a similar argument with respect to the following language in Local Rule 14.9: "**Orders** [a]ppointing special process severs may list more than one licensed server as alternatives." (Emphasis added). The relevance of Local Rule 14.9 derives from the pertinent language in § 506.140.1, which provides that special process servers may be appointed "following procedures established by local court rules for service of process in any cause." Specifically, Coburn argues that the reference to "orders" in Local Rule 14.9 also imposes such a requirement on the general appointment procedures of this circuit court. However, like § 506.180, Local Rule 14.9 does not address the actual procedures for appointing special process servers. In fact, our review of these Local Rules does not reveal any clear procedures for appointing special process servers. The closest such procedure appears to be contained in Local Rule 14.1, which simply provides as follows: "Any person appointed by the Court or the Circuit Clerk to serve process must have a license issued pursuant to this rule to serve process." The remaining Local Rules address the preliminary licensing requirements and other miscellaneous matters. Regardless, we find that the reference to "orders" in Local Rule 14.9 is, at most, incidental to the court's appointment procedures in Local Rule 14, and does not impose such a requirement in that circuit court. Moreover, to the extent Local Rule 14.9 arguably imposes an order requirement, we find that it is also merely directory in nature, and thus, the omissions did not deprive the circuit court of personal jurisdiction over Coburn. *See Hometown Lumber & Hardware*, 816 S.W.2d at 915-16.

19

Third, these omissions, to the extent they constitute irregularities or defects in service, do not subject the Default Judgment to collateral attack in this (or any other similar) proceeding because, under the rules set forth in *Hirst*, they are not so "radical" as to "amount[] to no process at all as where it wholly fails to give the party the information it is expected to convey, or where the attempted service is so faulty that it does not reach defendant at all…." 195 S.W.2d at 740. As noted, Coburn does not dispute that she received the Summons and petition in the Collection Case, nor does she take issue with the notice provided therein. Accordingly, we hold that the Default Judgment is not void and subject to collateral attack.

In further support of her argument that the Default Judgment is void, Coburn relies on *Worley v. Worley*, 19 S.W.3d 127 (Mo. banc 2000), and *Flair v. Campbell*, 44 S.W.3d 444 (Mo. App. W.D. 2001), for the proposition that an order is required under § 506.140.1. Specifically, Coburn notes that in each case the appellate court held that the circuit court lacked personal jurisdiction over the defendant because the special process server was not appointed pursuant to § 506.140.1 in that no "order" was entered. For example, Coburn cites the following passage from *Worley*: "Here, there is no **order** appointing Kevin Nichols as process server." 19 S.W.3d at 127 (emphasis added). Likewise, Coburn cites the following passage from *Flair*: "No **order** appointing a special process server appears in the record…." 44 S.W.3d at 451 (emphasis added).

However, Coburn's reliance on *Worley* and *Flair* is misplaced because those cases are readily distinguishable from this case in one key respect—in both *Worley* and *Flair* the respective plaintiffs had not filed any type of motion or other request seeking the appointment of the persons who ultimately served the defendants with process. Thus, the dispositive issue in these cases was <u>not</u> whether a proper appointment under § 506.140.1 required an order by the circuit court or circuit clerk. Rather, both *Worley* and *Flair* simply stand for the proposition that

neither a circuit court nor a circuit clerk can "appoint" a process server whom the plaintiff had never nominated or requested to be appointed in the first place.

In this case, however, it is undisputed that Kramer & Frank indeed filed a request in the Collection Case specifically nominating or requesting the appointment of Post as the lone special process server in the Collection Case, and there is no dispute that Post ultimately served Coburn with the Summons and petition. Accordingly, neither *Worley* nor *Flair* can be read to support the proposition that an order of a circuit court or circuit clerk specifically appointing a nominated or requested special process server is required under § 506.140.1 or Rule 54.01, as Coburn incorrectly suggests. In her brief to this Court, Coburn also cites *Reisinger v. Reisinger*, 39 S.W.3d 80 (Mo. App. E.D. 2001), and *Maul v. Maul*, 103 S.W.3d 819 (Mo. App. E.D. 2003), but fails to explain their specific relevance to this case. Regardless, we find that both *Reisinger* and *Maul* are likewise inapposite with respect to Coburn's point on appeal because both cases involved defendants who were served by a different person than the one who was properly appointed upon request of the plaintiff. The issue in both *Reisinger* and *Maul* was <u>not</u> the requirements for a proper appointment under § 506.140.1. Rather, those cases stand for the simple proposition that the person who serves a defendant must be the same person who was properly appointed.

We also note it is axiomatic that the authority of circuit clerks in Missouri is extremely limited relative to that of circuit courts (or judges). For example, the Supreme Court of Missouri has generally recognized that, "[t]he clerk of a circuit court is an administrative officer, whose functions are largely ministerial in character." *State ex rel. and to Use of City of St. Louis v. Priest*, 152 S.W.2d 109, 112 (Mo. 1941). "The circuit clerk is an arm of the circuit court. The circuit clerk does not act independently of the circuit court, but acts 'under the supervision of the

judge.'" *Twentieth Judicial Circuit of State of Missouri v. Bd. of Comm'rs of Cty. of Franklin*, 911 S.W.2d 626, 628 (Mo. banc 1995) (quoting *Cannon v. Nikles*, 151 S.W. 472, 475 (Mo. App. 1941)). "Thus, the clerk is an agent of the circuit judge and possesses the statutory authority to perform certain tasks. The judge, as the principal, possesses the inherent power to perform the tasks." *Id*. More to the point, our Supreme Court has specifically recognized that, "[a] judge's supreme responsibility is in respect of the orders and judgments he makes; no one else can pronounce them, or amend, alter, or impair them after they are given, except a court of review...." *State ex rel. Caldwell v. Cockrell*, 217 S.W. 524, 530 (Mo. banc 1919). Thus, "a judgment is the act of the court, its entry in the record the act of the clerk, the first being judicial, the second ministerial…." *Id*. On this basis, Missouri courts have repeatedly held that acts of circuit clerks without an "order" are void. *See, e.g., State v. Fenley*, 275 S.W. 36, 39 (Mo. 1925) (holding that a search warrant issued by the circuit clerk upon the affidavit of the prosecuting attorney was a "nullity," specifically noting that the clerk "had no authority to issue a search warrant ***without an <u>order</u> of <u>court</u>***" (emphasis added)).

However, the fact remains that the plain and unambiguous language of § 506.140.1 expressly grants circuit clerks the authority to appoint special process servers. Thus, if we hold that an "order" (in the strictest sense) is required to effectuate such an appointment, this would effectively render the relevant language in § 506.140.1 meaningless, which would violate a fundamental rule of statutory construction. *See Middleton v. Missouri Dep't of Corr.*, 278 S.W.3d 193, 196 (Mo. banc 2009) (recognizing that "a court should not interpret a statute so as to render some phrases mere surplusage"). Accordingly, we cannot adopt Coburn's proposed construction of § 506.140.1.[14]

---

[14] Coburn's proposed construction of § 506.140.1 would also create a similar conflict with Rule 74.02 and § 506.050. Rule 74.02 defines an "order" as: "Every direction of a **court** made or entered in writing and not included

Moreover, to the extent Coburn argues that an order of appointment under § 506.140.1 must be physically signed by the judge to be valid, we find *Williams v. Luecke*, 152 S.W.2d 991 (Mo. App. 1941), to be instructive. In *Williams*, the trial court was presented with an order granting the plaintiff's request for service by publication, pursuant to § 893 Mo. Rev. Stat. (1939), because the defendants could not be found for personal service. *Id*. at 995. Although there was a "record entry" that the request had been granted, the order itself was not physically signed by the judge, despite having space for a signature. *Id*. On appeal, the defendants argued that a signed order was necessary, and thus, complained that the subsequent service by publication was invalid. *Id*. However, this Court rejected that argument, stating as follows:

> The fact is, however, that the signature of the judge was not essential to the validity of the order, which, according to the record entry, was filed in the case on one of the regular days of court. Under such circumstances, the order was distinctly an order of court, which derived its validity from the fact, as evidenced by the record, that it was made by the court during the transaction of its official business. The order, as it appears entered of record, was the order of the court, including the finding, to the satisfaction of the court, that appellants could not be found …; ***and the judge's signature, even if it had been affixed to the order, could have added no legal efficacy to which it did not otherwise possess***.

*Id*. (emphasis added). Likewise in this case, the judge's signature on the SPS Request itself was not necessary to effectuate the appointment of Post pursuant to § 506.140.1 due to the April 14, 2014 docket entry reflecting the issuance of "Summons 3534" for Coburn. As previously discussed, based on the face of the record in this case, the only logical conclusion is that the

---

in a judgment…" (emphasis added). In addition, § 506.050 similarly provides: "Every direction of a **court** or **judge**, made or entered in writing and not included in a judgment, is denominated an order, and an application for an order is a motion" (emphasis added). In this case, if the SPS Request is deemed an application for an "order" within the meaning of § 506.050, which only a court or judge could grant, such a result could not be permitted under the rules of statutory construction. *Middleton*, 278 S.W.3d at 196. Rather, although the SPS Request was denominated a "motion" by MSD, we find that it was actually a simple request for the appointment of Post as special process server pursuant to § 506.140 and Rule 54.01 (as it clearly cited to these authorities therein), and thus, no "order" is required.

circuit clerk intended to appoint Post, as authorized by § 506.140.1, and extrinsic evidence would be required to establish otherwise.[15]

We also briefly address Coburn's argument that she has stated claims under the MMPA and for unjust enrichment. As noted, we have found that the core allegation of both claims is that the Default Judgment is void as a matter of law for lack of personal jurisdiction. At oral argument, Coburn's counsel expressly admitted that the Class Action Petition is indeed an attempt to "impeach" the Default Judgment. Accordingly, because we hold that the Default Judgment is not void for the reasons set forth herein above, and thus, is not subject to collateral attack, we also hold that Coburn's MMPA and unjust enrichment claims fail as a matter of law, and further discussion thereof is not warranted. That said, we note that in support of her MMPA claim, Coburn cited *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721 (Mo. banc 2009), for the general proposition that a "voluntary payment is not a defense to a MMPA claim." However, Coburn's reliance on *Huch* appears to be misplaced, as the issue of whether Coburn's payment of "over $500" to MSD was voluntary or involuntary was strictly in the context of whether the Class Action Case is moot. Therefore, although *Huch* may indeed stand for the general proposition that "the voluntary payment doctrine is not available as a defense to a violation of the [MMPA]," 290 S.W.3d at 727, our dismissal of Coburn's MMPA claim is not in any way premised on her "voluntary payment" of the "over $500" to MSD (or otherwise

---

[15] Notwithstanding our holding in this case, we take this opportunity to encourage all circuit courts and circuit clerks to hereafter take all reasonable steps to ensure that any future appointments pursuant to § 506.140.1 (or any similar statutes or rules) clearly reflect the identity of the appointed special process server in order to avoid any possible uncertainty, confusion, or requests to set aside a judgment (default or otherwise) due to any claimed irregularities or defects in connection with service of process similar to those asserted by Coburn in this collateral attack, including but not limited to: (1) the circuit judge or circuit clerk signing a request for an appointment; (2) a docket entry reflecting the appointment and the identity of any special process server; and (3) the circuit clerk including the name of all appointed special process servers in the summons. As noted in footnote 11 herein above, however, this footnote should not be construed as a comment on whether the defects or irregularities alleged by Coburn in this case would constitute grounds to set aside the Default Judgment pursuant to Rule 74.06(b)(3), as that issue is not before this Court.

satisfying the Default Judgment). On the contrary, as noted above, we have found that her payment of the same was indeed "involuntary" within the meaning of our mootness jurisprudence. Regardless, Coburn's MMPA claim, like her unjust enrichment claim, is dismissed because she is foreclosed from launching a collateral attack on the Default Judgment, which is exactly what both claims seek to do.

Finally, we have considered Coburn's other arguments in support of her point on appeal, and we likewise find that they are without merit but do not merit further discussion.

Appellant's point on appeal is denied.

## IV.    Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
Kelly C. Broniec, Judge


Colleen Dolan, P.J. and
Robert M. Clayton III, J. concur.